640 P.2d 471

**Kathleen Ann BELOSKY,
Petitioner-Appellee,**

v.

**Robert John BELOSKY,
Respondent-Appellant.**

No. 13902.

Supreme Court of New Mexico.

Feb. 8, 1982.

Atkinson & Kelsey, Jan B. Gilman, Albuquerque, for respondent-appellant.

Harold B. Worland, Albuquerque, for petitioner-appellee.

## OPINION

RIORDAN, Justice.

Kathleen Ann Belosky (mother) filed a petition in New Mexico for modification of an Ohio decree which granted her custody of her two minor children but by modification restricted her from permanently removing the children from Ohio. Robert John Belosky (father) filed a motion to dismiss the petition for modification based on lack of jurisdiction, and to enforce an Ohio decree granting him emergency temporary custody. The trial court denied the father's motion. We reverse.

On April 24, 1981, the mother removed the children from Ohio with the apparent intent of relocating in Albuquerque, New Mexico without approval by the Ohio court or the father. This was in violation of a stipulated order entered by the Ohio court on May 15, 1980.

On April 28, 1981, the Ohio court granted the father emergency temporary custody for the purpose of returning the children to Ohio. On June 8, 1981, the order was extended subject to a hearing on the merits of the father's motion for change of custody in Ohio. Both parties were ordered by the Ohio court to return the children to Ohio pending the completion of its child custody investigation.

On May 13, 1981, the mother filed her petition in New Mexico for modification of the Ohio order of May 15, 1980. She asked that the New Mexico court modify the Ohio decree to allow her to remain in New Mexico with custody of the children.

On July 10, 1981, the father filed his motion in New Mexico to dismiss the mother's petition for lack of jurisdiction and to enforce the Ohio temporary decree. After the trial court denied the motion to dismiss, we granted permission for an interlocutory appeal.

The issues we consider on appeal are:

I. Whether the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C.A. § 1738A (Spec.Pamp.1981), precludes a New Mexico modification of the Ohio order of May 15, 1980.

II. Whether the PKPA requires New Mexico to give full faith and credit to Ohio's emergency temporary order of June 8, 1981.

In *Valles v. Brown*, 97 N.M. 327, 639 P.2d 1181 (1981), we ruled that the effective date of the PKPA is December 28, 1980. Therefore, the PKPA applies in this case.

I. *Modification of the Ohio order.*

We follow the analysis of *Valles v. Brown, supra,* in applying the PKPA to this case. Section 1738A(f) of the PKPA sets forth the conditions upon which the New Mexico trial court may grant the mother's petition to modify the Ohio order of May 15, 1980.

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C.A. § 1738A(f) (Spec.Pamp.1981).

In this case, the second condition required under subsection (f) that would allow New Mexico to modify, has not been met. Ohio continues to have jurisdiction over the parties and this case under its law. Under its own law, the Ohio court obtained jurisdiction over the parties and their minor children in the 1977 Ohio divorce decree. It has maintained continuing jurisdiction over the parties and their minor children as the children's "home state" and "state of significant contact" pursuant to Ohio law. It continued to have jurisdiction even after the mother removed the children to New Mexico since the father continued to reside in Ohio. Ohio Rev.Code Ann. title 31, § 3109.22 (Anderson 1980). The Ohio court has *not* declined to exercise its jurisdiction.

Under subsection (d) of the PKPA, a state continues to have jurisdiction if it: 1. made a child custody determination "con-

sistently" with the provisions of the PKPA; 2. continues to meet the requirements of subsection (c)(1) of the PKPA; and, 3. continues to be the residence of the child or any contestant. As we have already recognized, the father continues to reside in Ohio; and Ohio continues to have jurisdiction under its *own laws.*

The only inquiry left to make as to Ohio's continual jurisdiction under subsection (f) is whether the Ohio decree is "consistent" with the PKPA. To do this we refer to subsection (c).

(c) A child *custody determination* made by a court of a State *is consistent* with the provisions of this Section only if—

(1) such court has jurisdiction under the law of such State; and

(2) *one of the following* conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D) (i) it appears that no other State would have jurisdiction under subpara-

graph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section. [Emphasis added.]

28 U.S.C.A. § 1738A(c) (Spec.Pamp.1981).

▮▮ We have already determined that Subsection (c)(1) has been met. Subsection (c)(2) is also met. Since the children lived in Ohio for at least six months immediately preceding the Ohio order of May 15, 1980, Ohio was the home state of the children at the time of the commencement of the proceeding. § 1738A(b)(4). Having met these conditions, we find that New Mexico is without jurisdiction to entertain the mother's petition to modify the Ohio order of May 15, 1980.

The mother contends that the Ohio order of May 15, 1980 does not come within the purview of the PKPA because it was not a "custody determination" within the definition of Section 1738A(b)(3), and because it placed discretionary powers of the court in the hands of the father which amounted to relinquishment of its jurisdiction. We do not agree. Notwithstanding the propriety of the Ohio order, restricting relocation by the custodial parent without consent by the noncustodial parent or the court the court made a valid "modification". A modification is clearly included in the definition of "custody determination" under Section 1738A(b)(3).

The mother also states that the purpose of the PKPA is to prevent interstate abductions and other removal of children for the purpose of obtaining custody. Since she already had legal custody before filing her petition in New Mexico, she argues that the PKPA should not apply.

▮▮ Although the mother correctly states one of the purposes of the PKPA, Congress was not motivated by that pur-

368

pose alone. Other stated purposes address directly the problems of forum shopping which are applicable equally to *custodial* and noncustodial parents.

   (c) The general purposes of sections 6 to 10 of this Act are to—

      (1) promote cooperation between State courts to the end that a determination of custody and visitation is rendered in the State which can best decide the case in the interest of the child;

      (2) promote and expand the exchange of information and other forms of mutual assistance between States which are concerned with the same child;

      (3) facilitate the enforcement of custody and visitation decrees of sister States;

      (4) discourage continuing interstate controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

      (5) avoid jurisdictional competition and conflict between State courts in matters of child custody and visitation which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being. . . . [Omitting (6).]

Parental Kidnapping Prevention Act of 1980, Pub.L.No.96–611, § 7(c)(1) through (5), 94 Stat. 3566 (1981).

II. *Full Faith and Credit of the Ohio Emergency Order.*

   Section 1738A(a) of the PKPA states:

   The appropriate authorities of every State *shall enforce* according to its terms, and shall not modify except as provided in subsection (f) of this section, *any* child *custody determination* made *consistently* with the provisions of *this section* by a court of another State. [Emphasis added].

28 U.S.C.A. § 1738A(a) (Spec.Pamp.1981).

   ▇ The temporary order of June 8, 1981 was a "custody determination" as defined in Section 1738A(b)(3).

   ▇ In determining whether the temporary order was made "consistently" with the PKPA, we must consider that order in light of the new "time involved", June 8, 1981, to see if it affects Ohio's status of "home state" under Section 1738A(b)(4). The mother removed the children from Ohio on April 24, 1981, so they were not living in Ohio for six months "*immediately preceding* the time involved." However, since Ohio had been the home state of the children up until April 24, 1981 (within six months before the June 8, 1981 order), the conditions of subsection (c)(2)(A)(ii) are met and the order deserves the full faith and credit of the New Mexico trial court.

   The mother claims that she did not receive notice of the June 8, 1981 Ohio order as required by Ohio law. As a result, she argues that Ohio did not have jurisdiction to enter the order; and therefore, the Ohio order is not entitled to full faith and credit under the PKPA.

   The record indicates that the Ohio court found that the mother had been duly served under Ohio law. For us to rule that the mother did not receive adequate notice, or to look behind the finding of the Ohio court would allow unhappy litigants to apply to our courts for reversal of adverse rulings in other states. This would thwart the purpose of the PKPA. The mother's proper forum for challenging her notice of the June 8 order is in Ohio.

   The mother also claims that the June 8 order is not entitled to full faith and credit since it was based on her alleged contemptuous actions and was therefore punitive in nature.

   Here again, we will not second guess the motives and correctness of the Ohio court. In addition, the PKPA has no provision excusing the enforcement of punitive decrees.

   Because of the result of our application of the PKPA in this case, we do not find it necessary to discuss the issues raised by the parties concerning the New Mexico Child Custody Jurisdiction Act. §§ 40–10–1 through 40–10–24, N.M.S.A. 1978 (Cum. Supp.1981).

The trial court is reversed, and this case is remanded with instructions to proceed in a manner not inconsistent with this opinion.

IT IS SO ORDERED.

PAYNE and FEDERICI, JJ., concur.