In the Matter of FARMLAND DAIRIES et al., Petitioners, v J. ROGER BARBER, as Commissioner of the New York State Department of Agriculture and Markets, Respondent.

Third Department, July 26, 1984

APPEARANCES OF COUNSEL

*Friedman & Wittenstein* (*Stuart I. Friedman* of counsel), for petitioners.

*Thomas G. Conway* (*Michael McCormick* of counsel), for respondent.

OPINION OF THE COURT

LEVINE, J.

Petitioner Farmland Dairies (Farmland) is a closely held New Jersey dairy manufacturing corporation which holds

New York licenses to purchase and sell raw milk in this State. Petitioners Fair Lawn Dairies, Inc. (Fair Lawn) and Fairdale Milk Company (Fairdale) are wholly owned New Jersey-based subsidiaries of Farmland. Fair Lawn is licensed to sell and distribute packaged milk in Westchester, Rockland and Orange Counties, and to sell processed milk products in other areas in the State. In 1979, following acquisition of a Long Island milk dealer, Fair Lawn applied to the Department of Agriculture and Markets (the department) for an extension of its New York dealer's license to Nassau and Suffolk Counties. The following year, while Fair Lawn's application was still pending, Farmland and various other New Jersey milk dealers were charged by the Attorney-General of New Jersey with criminally conspiring to rig bids for the sale of dairy products in that State in violation of the New Jersey antitrust laws. A comprehensive plea bargain was struck in that criminal action under which, *inter alia,* each defendant agreed to plead guilty to the charge, pay a $50,000 fine, and receive back all documents previously obtained by the prosecution during the course of the investigation. Of particular significance here, the Attorney-General also agreed that, as a condition to the pleas, defendants' motions pursuant to rule 3:9-2 of the New Jersey Court Rules Governing Criminal Practice would be granted. Rule 3:9-2 provides, in pertinent part, that "[f]or good cause shown the court may, in accepting a plea of guilty, order that such plea not be evidential in any civil proceeding".

In May, 1981, the department gave notice to petitioners that a hearing would be held to consider whether (1) Farmland's New York license should be revoked because of its antitrust violations in New Jersey and the participation of one of its officers in that activity, and (2) whether Fair Lawn's extension application should be denied for the same reasons, plus certain alleged violations of conditions attached to a prior extension of Fair Lawn's license to Westchester County and the effect the further extension Fair Lawn was seeking would have on competition in the Nassau/Suffolk market. An evidentiary hearing was held in which a certified copy of Farmland's New Jersey conviction was received in evidence and testimony was given on the

merits both for and against Fair Lawn's extension application. At the conclusion of the hearing, the hearing officer recommended that Farmland's license not be revoked and that Fair Lawn's extension application be granted. However, respondent Commissioner of the Department of Agriculture and Markets (the commissioner) rejected that recommendation. Instead, the commissioner denied the extension application, relying on the evidence of Farmland's New Jersey conviction, the nature of the current Nassau/Suffolk market and Fair Lawn's prior history of concentrating on sales to large supermarket chains, which he found already to be adequately served on Long Island. The commissioner refrained, however, from revoking all of petitioners' existing licenses on condition that they file periodic reports on their New York bidding activities. Petitioners now seek judicial review of the foregoing denial of the Fair Lawn extension application.

The principal and dispositive issue on review is whether it was proper for the commissioner to rely on Farmland's New Jersey antitrust conviction in denying Fair Lawn's extension application in the face of the recital in the judgment of conviction, made pursuant to New Jersey's rule 3:9-2, that the court granted defendant's motion that the guilty plea "shall not be evidential in any civil proceeding". Clearly, under New York statutory and decisional law, Farmland's plea and conviction could be used as evidence. Subdivision (f) of section 258-c of the Agriculture and Markets Law specifically authorizes the commissioner to deny a license extending an existing business when, after a hearing, he is satisfied by a preponderance of the evidence that "the milk dealer has been a party to a combination to fix prices, contrary to law". Farmland's conviction of conspiracy to rig bids was at least prima facie evidence of the relevant underlying fact that it had engaged in price-fixing with others (*Schindler v Royal Ins. Co.*, 258 NY 310). Indeed, although he did not do so, the commissioner could have applied the doctrine of collateral estoppel to the conviction and precluded Farmland from contesting the underlying facts (*S. T. Grand, Inc. v City of New York,* 32 NY2d 300). As an admission, Farmland's guilty plea was also probative evidence of its criminal

conduct (*People v Compton,* 38 AD2d 788; *Quay v Hertz Corp.,* 29 AD2d 713). In New York delicensure matters, even a foreign conviction based upon a plea of *nolo contendere* is evidence of the underlying misconduct (*Matter of Adel,* 41 AD2d 509, 510). In view of Fair Lawn's officer's testimony that it is the "family" of Farmland companies that seeks to do business in Nassau and Suffolk Counties, the commissioner was also fully justified in equating Farmland's prior misconduct with that of Fair Lawn, its wholly owned subsidiary.

Petitioners contend, however, that, under principles of full faith and credit (US Const, art IV, § 1; US Code, tit 28, § 1738), the commissioner was prevented from using Farmland's plea and conviction as evidence.* They point out, and the commissioner does not dispute, that in New Jersey, rule 3:9-2 has been applied to bar use of a criminal conviction in any administrative proceeding affecting State licensure (*Gallo Asphalt Co. v Sagner,* 71 NJ 405). Petitioners invoke the frequently repeated language in United States Supreme Court full faith and credit decisions that " 'the judgment of a state court should have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced' " (*Underwriters Assur. Co. v North Carolina Life,* 455 US 691, 704, quoting from *Hampton v McConnel,* 3 Wheat [16 US] 234, 235; accord *Riley v New York Trust Co.,* 315 US 343, 353). Petitioners argue that since the conviction could not be used as a basis to revoke or deny Farmland's dealer's license in New Jersey, full faith and credit requires that New York give the same "effect" to that restriction on the use of the conviction in the rendering State.

We think petitioners read the full faith and credit clause, both in its constitutional and statutory forms, too broadly. To begin with, we deal here with a New Jersey *criminal* judgment, traditionally excluded from the application of

---

* Petitioners have commenced a separate Federal civil rights action against the commissioner in the United States District Court for the Eastern District of New York in which they have challenged the determination herein on various constitutional grounds other than full faith and credit. That action has been stayed pending the conclusion of the instant CPLR article 78 proceeding. Consequently, this court is not called upon to consider any of petitioners' constitutional challenges to the determination other than that based upon full faith and credit.

the full faith and credit concept. As stated in *Nelson v George* (399 US 224, 229), "Since the Full Faith and Credit Clause does not require that sister States enforce a foreign penal judgment * * * California is free to consider what effect, if any, it will give to the North Carolina detainer". This means that, assuming that there are no other constitutional infirmities (such as those at issue in petitioners' Federal lawsuit), there is nothing to prevent another jurisdiction, in exercising its domestic police power, from giving a *greater* effect to a sister State's conviction than it would be given in the rendering State (see, e.g., *Thrall v Wolfe,* 503 F2d 313, 315-316, cert den 420 US 972; *United States ex rel. Cannon v Maroney,* 373 F2d 908, 910; *Groseclose v Plummer,* 106 F2d 311, 312-313, cert den 308 US 614).

Even more importantly, the duty of a State to give "effect" to a sister State's judgment, in the sense of an absolute constitutional mandate, has a far more limited scope than petitioners' thesis here would imply. The mandate, in the rigorous form advocated here by petitioners, does not apply to *all* effects of the judgment, but only to the *res judicata* and collateral estoppel effects of the judgment. This reflects the underlying purpose of the full faith and credit clause to prevent basic conflict among the judicial systems of the States by prohibiting a party from going to another jurisdiction and relitigating the merits of a dispute previously resolved by a valid State court judgment (see Reese & Johnson, The Scope of Full Faith and Credit to Judgments, 49 Col L Rev 153, 172). As stated in *Riley v New York Trust Co.* (315 US 343, 349, *supra*), "By the Constitutional provision for full faith and credit, the local doctrines of *res judicata,* speaking generally, become a part of national jurisprudence". More recently, the Supreme Court has stated, "Full faith and credit thus generally requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it" (*Durfee v Duke,* 375 US 106, 109). The principle has been extended to require that collateral estoppel (issue preclusion) effect also be given to the prior judgment (*Winters v Lavine,* 574 F2d 46, 54; *United States v Silliman,* 167 F2d 607, 620-621, cert den 335 US 825).

Neither the commissioner nor petitioners, however, are seeking to impose a *res judicata* or collateral estoppel effect on Farmland's conviction. The commissioner relied upon the conviction solely as prima facie (and not conclusive) evidence of Farmland's collusive conduct and, obviously, petitioners are not contending that the conviction has any preclusive effect on their claim for a license extension or on the factual issue of Farmland's guilt as a price fixer. Nor could the New Jersey criminal judgment have such a preclusive effect on the department in this proceeding, since it was not a party nor in privity to a party to the New Jersey criminal proceeding (see Siegel, NY Prac, § 458, p 605). Instead, petitioners are here insisting that the judgment of conviction be given the same *evidentiary* effect in New York as in New Jersey.

Moreover, the underlying basis for the restriction on the use in evidence of the conviction in New Jersey is New Jersey's rule 3:9-2 and not the judgment itself. The rule, by its terms, contemplates a separate order restricting evidentiary use; the fact that Farmland was successful in having the restrictive order incorporated into the judgment is, therefore, irrelevant for purposes of full faith and credit analysis. Whether contained in a separate order or in the judgment, the restriction on use as evidence is wholly dependent upon the rule for its validity. Thus, the issue here comes down to one of choice of law, i.e., whether New Jersey's rule barring evidentiary use of a conviction under the circumstances should control over New York's common-law rule that the conviction is admissible to prove the underlying facts of the charge. To be sure, the purposes of the framers of the Constitution to avoid potential conflict among State legal systems introduces a full faith and credit dimension to the resolution of the conflict between the rules of the two States presented here (see *Allstate Ins. Co. v Hague,* 449 US 302; *Nevada v Hall,* 440 US 410; *Alaska Packers Assoc. v Commission,* 294 US 532; see, also, Martin, Constitutional Limitations on Choice of Law, 61 Cornell L Rev 185). However, full faith and credit has never been applied with the same rigor to choice of law questions as when enforcement of a valid sister State judgment between the same parties is at issue (see *Alaska*

*Packers Assoc. v Commission, supra,* p 547). Today, a forum State is given wide latitude to apply its own substantive law when its legitimate interests overlap those of another jurisdiction. The case of *Allstate Ins. Co. v Hague* (*supra*) sets forth the current full faith and credit choice of law criteria that "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair" (*supra,* at pp 312-313).

Measured by the foregoing test, even if a substantive rule of law were involved, New York would be amply justified to decline to apply the limitation imposed by New Jersey rule 3:9-2. The matter being litigated here is, after all, one directly affecting the New York dairy industry, heavily regulated because of its importance to the health of both New York's citizenry and the State's economy. New York certainly has the primary interest as to whether, in view of petitioners' anticompetitive behavior, they should be permitted to expand their privilege of participating in that industry in this State. New York's interest is clearly superior to any conceivable interest of New Jersey in the instant litigation, i.e., the remotely possible impact that not giving extraterritorial effect to rule 3:9-2 might have on impeding that State's expeditious disposition of criminal cases.

The case for New York's freedom to apply its own law is even stronger when the choice of law issue here is properly viewed as involving competing rules of *evidence* on the admissibility of Farmland's guilty plea and conviction. As to the admissibility of evidence, the law of the forum State almost invariably controls (see Restatement, Conflict of Laws 2d, §§ 138, 139). And this represents New York's position with respect to the use in its courts of evidence of an out-of-State criminal conviction (*Able Cycle Engines v Allstate Ins. Co.,* 84 AD2d 140, 146-147, mot for lv to app den 57 NY2d 607).

Accordingly, full faith and credit did not prevent the commissioner from receiving in evidence and considering Farmland's guilty plea and conviction on the merits. Since

this and other evidence contained in the record are sufficient to support the commissioner's denial of Fair Lawn's extension application under the applicable statutory standard or proof (Agriculture and Markets Law, § 258-c), the determination should be confirmed and the petition dismissed.

MAIN, J. P., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Determination confirmed, and petition dismissed, with costs.