■ In the Matter of FARMLAND DAIRIES et al., Petitioners, v JOSEPH GERACE, as Commissioner of the New York State Department of Agriculture and Markets, Respondent.—Main, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which, inter alia, denied the application of petitioner Fair Lawn Dairies, Inc., for an extension of its milk dealer's license to sell milk in Nassau and Suffolk Counties.

This matter has previously been before this court, and the facts giving rise to petitioners'[1] initial CPLR article 78 proceeding are set forth in our decision in that proceeding (Matter of Farmland Dairies v Barber, 103 AD2d 11). Our previous decision confirmed a determination of the Commissioner of Agriculture and Markets[2] denying Farmland's application for an extension of its dealer's license to sell milk in Nassau and Suffolk Counties. The Commissioner's decision relied, inter alia, on evidence concerning Farmland's New Jersey conviction for violation of the New Jersey antitrust laws. The Court

1. Petitioners are Farmland Dairies, Fair Lawn Dairies, Inc., and Fairdale Milk Company. All three are New Jersey-based milk dealers licensed in several New York counties. Fair Law and Fairdale are wholly owned subsidiaries of Farmland. For purposes of this decision, all three will be referred to collectively as Farmland.

2. At the time of the initial determination in 1982, J. Roger Barber was Commissioner of Agriculture and Markets. Respondent herein is Joseph Gerace, the current Commissioner.

of Appeals subsequently reversed this court's decision and annulled the Commissioner's determination, finding that consideration of Farmland's New Jersey conviction was improper *(Matter of Farmland Dairies v Barber,* 65 NY2d 51, *revg* 103 AD2d 11). On remand, the Commissioner again denied the extension of Farmland's license, adopting the findings and conclusions set forth in his prior determination but excluding those relating to the New Jersey conviction. The Commissioner thus found that granting the extension would tend to destructive competition in a market already adequately served and would not be in the public interest *(see,* Agriculture and Markets Law § 258-c). This CPLR article 78 proceeding ensued.

Farmland contends that "destructive competition" has a specific meaning, namely, competition that would destroy the balance of the distribution system and deprive consumers of an adequate supply of milk. Farmland further contends that the economic well-being of dealers currently in the market is not a valid consideration in determining whether destructive competition would result from an extension of the license. In essence, therefore, Farmland seeks to have the Commissioner demonstrate that competition would be not simply damaged, but destroyed. Recently, we specifically rejected such a definition of destructive competition in *Matter of Marcus Dairy v Gerace* (120 AD2d 832), where we stated that: "The case law does not * * * [require] proof of a tendency to a ruinous, devastating harm to competition. Rather, it has been held sufficient for the [Commissioner] to establish that permitting the entry of a new competitor would entail a long-term, projected risk of destabilization in the distribution structure of the market * * * or that it would potentially disturb the balanced distribution structure" *(id.,* pp 832-833 [citations omitted]). Relevant factors in determining whether there is a potential for such a disturbance include, *inter alia,* whether existing enterprises are operating below their capacity in a competitive market *(id.; see, Matter of Dellwood Foods v Barber,* 90 AD2d 892); whether a new licensee would depress prices or unit costs, undermining existing dealers' ability to operate at a reasonable profit *(Matter of Marcus Dairy v Gerace, supra,* p 833; *see, Matter of Tuscan Dairy Farms v Barber,* 45 NY2d 215, 220-221, *appeal dismissed* 439 US 1040); and whether the birth rate in the market area at issue has declined *(see, Matter of Dellwood Foods v Barber, supra).*

We find that the Commissioner correctly determined that Farmland's entry into the Nassau-Suffolk market does have

the potential for disrupting the market's balanced distribution structure. Testimony at the hearing in connection with this matter established that the Nassau-Suffolk market is highly competitive, with over 170 dealers serving a population in which birth rates are declining and in which milk consumption is steadily decreasing.[3] Dealers testified that they regularly operate below their capacity. Testimony further showed that dealers who maintain less profitable home retail and small wholesale accounts depend upon some amount of larger wholesale business (e.g., supermarkets) in order to operate at a reasonable profit. Loss of these larger accounts would undermine those dealers' ability to operate at a reasonable profit, and, consequently, to service home retail and small wholesale accounts. Given these facts, we are of the opinion that the Commissioner properly concluded that Farmland's entry into the Nassau-Suffolk market would tend to a destructive competition in that such entry has the potential for disturbing the balanced distribution structure of the market.

Farmland's reliance on *Matter of Tuscan Dairy Farms v Barber (supra)* for the proposition that the Commissioner may not consider the economic well-being of dealers in making his determination is misplaced. The statements in *Tuscan* on which Farmland relies, discussing protection of the distribution structure for consumer benefit *(id.,* p 228), were made in connection with an interstate commerce issue, an issue which has not been raised in the present proceeding. Indeed, *Tuscan* itself considers the effect on existing dealers of the issuance of a new license for a particular area *(id.,* p 222). It is clear that effects upon existing dealers, which could possibly jeopardize the viability of certain types of sales, directly relate to consumer benefit, and the Commissioner is not precluded from considering such effects in making his determination.

Next, we conclude that the record demonstrates that the Nassau-Suffolk region is already adequately served by the presently licensed dealers. Contrary to Farmland's assertion, the determination of whether an area is already adequately served is not dependent upon a showing that consumers have an adequate choice of suppliers from which to purchase milk. Indeed, the primary considerations are whether the presently licensed milk dealers have an ample supply of milk to meet the area's needs and whether those dealers have ample facili-

---

**3.** We reject Farmland's characterization of the market as being noncompetitive and agree with the Commissioner that the Nassau-Suffolk area is a competitive market.

ties to expand their present volume should the need arise *(see, Matter of Perky Milk Corp. v Wickham,* 15 AD2d 624, 625; *Matter of Friendship Dairies v Du Mond,* 284 App Div 147, 153). As noted previously, there appears to be no question that the currently licensed dealers are able to supply ample milk to meet the area's needs and that those dealers are presently operating under capacity. Therefore, facilities are available for expansion of milk production should the need arise. Furthermore, evidence presented demonstrated that not only are the area's birth rates declining, but also milk consumption in the area is declining. Under such circumstances, the Commissioner correctly determined that the Nassau-Suffolk milk market is already adequately served.

We finally note that the Commissioner correctly determined that granting a license extension to Farmland would not be in the public interest. In a case such as this, such a determination "is but another aspect of the finding that the issuance of the license would tend to destructive competition" *(Matter of Friendship Dairies v Du Mond, supra,* p 155). One aspect of the public interest is to protect the stability of currently operating licensees so that they will be able to continue providing adequate service to the public at reasonable prices *(id.; see, Matter of Dairymen's League Co-op Assn. v Du Mond,* 282 App Div 69, 74, *appeal dismissed* 306 NY 595). In light of the Commissioner's finding that granting the license extension would tend to destructive competition in an area already adequately served, and given the finding that granting the extension has the potential for threatening service to certain types of customers, we find the Commissioner's determination to have been entirely proper.

Determination confirmed, and petition dismissed, without costs. Kane, J. P., Main, Casey, Yesawich, Jr., and Levine, JJ., concur.