633 A.2d 888

**Ronald GILLIS,**

v.

**STATE of Maryland.**

**No. 30, Sept. Term, 1993.**

Court of Appeals of Maryland.

Dec. 9, 1993.

---

George E. Burns, Jr., Asst. Pub. Defender, (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Gary Bair, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

Petitioner, Ronald Gillis, was tried in the Superior Court of Kent County, Delaware for the murder of Byron Parker. He was acquitted of the Delaware offense in April of 1990. Subsequently, Gillis was charged in Maryland with the first degree murder of Byron Parker pursuant to Maryland Code (1957, 1992 Repl.Vol.), Article 27, § 407.[1] The second murder charge followed the November 1990 discovery of Parker's body in Kent County, Maryland. Gillis filed a motion

---

1. All future references are to Maryland Code (1957, 1992 Repl.Vol.), Article 27, unless otherwise indicated.

to dismiss the Maryland charge, arguing that the second murder prosecution violated the Full Faith and Credit Clause of the United States Constitution by failing to recognize the Delaware acquittal. After a hearing (Price, J.), the motion to dismiss was denied, and Gillis appealed the adverse ruling to the Court of Special Appeals. Prior to the intermediate appellate court's consideration of the case, we granted Gillis's petition for certiorari to decide whether the Maryland prosecution may continue without violating the Full Faith and Credit Clause. For the reasons discussed below, we believe that it may proceed and that there is no constitutional impediment.[2]

---

**2.** Both parties addressed in their briefs whether an interlocutory appeal lies from the denial of a motion to dismiss on full faith and credit grounds. We granted certiorari only to decide whether the trial court erred in failing to dismiss the Maryland prosecution on full faith and credit grounds, and we will not dwell on the appealability issue.

We note, however, that this Court summarized the standards for immediate appealability in *Huff v. State*, 325 Md. 55, 599 A.2d 428 (1991):

"There is a narrow class of orders from which this Court permits immediate appeals even though the orders are not final judgments. Generally those orders must conclusively determine the disputed question, resolve an important issue, be completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."

325 Md. at 61, 599 A.2d at 431. *Cf. Parrott v. State*, 301 Md. 411, 483 A.2d 68 (1984) (discussing immediate appealability under collateral order doctrine).

In this case, it is undisputed that the order is conclusive, that the full faith and credit issue is important, and that it is entirely separate from the merits of the action. Since we have resolved Gillis's full faith and credit challenge by borrowing principles applicable to a double jeopardy challenge, we should afford Gillis the same right to appeal under the collateral order doctrine as a defendant who raises double jeopardy challenges. Based on our holding in the instant case, this should not unduly burden appellate courts. We also note that other states have permitted interlocutory appeals of full faith and credit claims under a variety of state procedures. *See, e.g., Storer v. Storer*, 305 So.2d 212 (Fla.App.), *cert. denied*, 346 So.2d 994 (Fla.1974), *cert. denied*, 434 U.S. 955, 98 S.Ct. 482, 54 L.Ed.2d 314 (1977); *Cobb v. Willis*, 7 Haw.App. 238, 752 P.2d 106 (1988); *Struebin v. State of Iowa*, 322 N.W.2d 84 (Iowa), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982); *Belosky v. Belosky*, 97 N.M. 365, 640 P.2d 471 (1982). The order in the instant case, therefore, is properly before this Court.

## I.

■ Although Gillis challenges the Maryland prosecution solely on full faith and credit grounds, we believe it helpful to begin our analysis with a brief overview of double jeopardy [3] principles regarding successive prosecutions by different sovereigns for the same conduct. Under the "dual sovereignty" doctrine, separate sovereigns deriving their power from different sources are each entitled to punish an individual for the same conduct if that conduct violates each sovereignty's laws. This well-established principle was reaffirmed in a pair of cases decided by the United States Supreme Court in 1959. *See Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) (concluding Double Jeopardy Clause did not bar federal prosecutions based upon the same acts for which the defendants were previously convicted in an Illinois state court); *Bartkus v. Illinois,* 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (determining that due process was not violated when a defendant was acquitted of federal charges and then convicted in a state prosecution based upon substantially identical facts). *See also United States v. Wheeler,* 435 U.S. 313, 330, 98 S.Ct. 1079, 1089, 55 L.Ed.2d 303, 317 (1978) (refusing to accept "so restrictive a view of [the dual sovereignty] concept" as to limit it to successive state and federal prosecutions, and concluding that double jeopardy did not bar a federal prosecution subsequent to the defendant's conviction by an Indian tribal court). In justifying the dual sovereignty doctrine, the Supreme Court stated: "[I]f the States are free to prosecute criminal acts violating their laws, and the resultant state prosecutions bar federal prosecutions based on the same acts, federal law enforcement [shall] necessarily be hindered." *Abbate,* 359 U.S. at 195, 79 S.Ct. at 671, 3 L.Ed.2d at 734. Likewise, if a federal acquittal prohibited a subsequent state prosecution, that would conflict with the states'

---

**3.** The Double Jeopardy Clause of the Fifth Amendment, in relevant part, provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." U.S. Const. amend. V.

obligation "to maintain peace and order within their confines." *Bartkus,* 359 U.S. at 137, 79 S.Ct. at 685, 3 L.Ed.2d at 694.

■ Most recently, in *Heath v. Alabama,* 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985), the United States Supreme Court reached the "inescapable" conclusion that the dual sovereignty doctrine permitted separate prosecutions for the same murder by both the states of Georgia and Alabama. The Court noted:

> "The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences.' *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 67 L.Ed. 314 (1922). As the Court explained in *Moore v. Illinois,* 14 How. 13, 19, 14 L.Ed. 306 (1852), '[a]n offence, in its legal signification, means the transgression of a law.' Consequently, when the same act transgresses the laws of two sovereigns, 'it cannot be truly averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences, for each of which he is justly punishable.' *Id.,* at 20."

*Heath,* 474 U.S. at 88, 106 S.Ct. at 437, 88 L.Ed.2d at 394. Recognizing that "[t]he States are no less sovereign with respect to each other than they are with respect to the Federal Government," *Heath,* 474 U.S. at 89, 106 S.Ct. at 438, 88 L.Ed.2d at 395, and acknowledging the importance of allowing each state to create and enforce its criminal code, the Court observed that "[t]o deny a State its power to enforce its criminal laws because another State has won the race to the courthouse 'would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines.'" *Heath,* 474 U.S. at 93, 106 S.Ct. at 440, 88 L.Ed.2d at 397 (quoting *Bartkus,* 359 U.S. at 137, 79 S.Ct. at 685, 3 L.Ed.2d at 694).

The *Heath* Court further remarked that "[a] State's interest in vindicating its sovereign authority through enforcement of its laws by definition can never be satisfied by another State's enforcement of *its* own laws." *Id.* (emphasis in original). Moreover, the Court recognized that a State "*must* be entitled to decide that a prosecution by another State has not satisfied its legitimate sovereign interest." *Id.* (emphasis added). Although the Court in *Heath* did not address whether full faith and credit could bar a state prosecution following another state's acquittal, the dual sovereignty principle supporting *Heath*'s conclusion may be viewed as equally applicable to full faith and credit challenges. *See State v. Edmondson*, 112 N.M. 654, 818 P.2d 855, 861 (1991) (using *Heath* to support the proposition that "full faith and credit does not bar a state from prosecuting a person for violation of its own statute despite an acquittal by another jurisdiction on a charge of the identical conduct"). *See also United States v. Hayes*, 589 F.2d 811, 817 (5th Cir.) (construing dual sovereignty doctrine broadly and noting the "well-established rule that there is *no constitutional bar* to successive state and federal prosecutions for the same criminal conduct" (emphasis added)), *cert. denied*, 444 U.S. 847, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979).

This Court adopted the dual sovereignty principle as a matter of Maryland common law in *Evans v. State*, 301 Md. 45, 481 A.2d 1135 (1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1411, 84 L.Ed.2d 795 (1985). The Court in *Evans* rejected the defendant's argument that, even if the Double Jeopardy Clause permitted a Maryland prosecution subsequent to a federal conviction based upon the same acts, the common law should prohibit it. 301 Md. at 58, 481 A.2d at 1141. *See also Bailey v. State*, 303 Md. 650, 660, 496 A.2d 665, 670 (1985) ("This Court has adopted, as a matter of common law, the dual sovereignty doctrine. Offenses against separate sovereigns are separate offenses for double jeopardy purposes even if the successive prosecutions are based upon the same acts."). In light of this case law, Gillis apparently recognizes the futility of challenging the Maryland prosecution as a violation of common law or constitutional double jeopardy.

## II.

■ With the double jeopardy door slammed tightly shut, Gillis looks to the Full Faith and Credit Clause in an attempt to escape the Maryland prosecution. We decline Gillis's invitation to use the Full Faith and Credit Clause as a means to circumvent the previously foreclosed double jeopardy challenge. Full faith and credit cannot be used to deny Maryland the power to enforce its criminal laws and thereby thwart this State's obligation to "maintain peace and order within [its] confines." *Bartkus*, 359 U.S. at 137, 79 S.Ct. at 685, 3 L.Ed.2d at 694. We hold that, with respect to successive criminal prosecutions by different states, the dual sovereignty rationale is applicable to the Full Faith and Credit Clause as well as the Double Jeopardy Clause.

Article IV, Section 1, of the United States Constitution provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Title 28, Section 1738, of the United States Code, implements the Full Faith and Credit Clause as follows: "Such Acts, records and judicial proceedings ... so authenticated, shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."

"The purpose of the Full Faith and Credit Clause is to require a state court to recognize judgments of courts of other states," *Weinberg v. Johns–Manville Sales Corp.*, 299 Md. 225, 234, 473 A.2d 22, 27 (1984), and to "preclude dissatisfied litigants from taking advantage of the federal character of the Nation by relitigating in one State issues that had been duly decided in another." *Kovacs v. Brewer*, 356 U.S. 604, 611, 78 S.Ct. 963, 968, 2 L.Ed.2d 1008, 1014 (1958) (Frankfurter, J., dissenting). Historically, the Clause primarily has been applied in the context of civil disputes. *See* Allan D. Vestal, *Criminal Prosecutions: Issue Preclusion and Full Faith and*

*Credit,* 28 Kan.L.Rev. 1, 5 (1979). While the United States Supreme Court has held that the Full Faith and Credit Clause does not require states to enforce the penal judgments of other states, *Nelson v. George,* 399 U.S. 224, 229, 90 S.Ct. 1963, 1966, 26 L.Ed.2d 578, 582 (1970), whether the clause applies to criminal matters "is not at all clear...." *Edmondson,* 112 N.M. 654, 818 P.2d at 860. As noted by one commentator, "[w]hen one moves from civil litigation to successive litigation involving criminal proceedings, ... the scope and impact of the concept of full faith and credit are very sketchy to say the least." Vestal, *supra,* 28 Kan.L.Rev. at 5. *See People v. Bacigalupo,* 1 Cal.4th 103, 133–34 & n. 9, 2 Cal.Rptr.2d 335, 350–51 & n. 9, 820 P.2d 559, 574–75 & n. 9 (1991) (exhibiting some uncertainty over whether full faith and credit applies to criminal cases), *vacated,* 503 U.S. ——, 113 S.Ct. 32, 121 L.Ed.2d 5 (1992); *City of New York v. Citisource, Inc.,* 679 F.Supp. 393, 395 n. 2 (S.D.N.Y.1988) (construing *Nelson* liberally, noting that "[c]riminal judgments, however, are not entitled to full faith and credit"); *Farmland Dairies v. Barber,* 103 A.D.2d 11, 14–15, 479 N.Y.S.2d 855, 857 (1984) ("[W]e deal here with a ... *criminal* judgment, traditionally excluded from application of the full faith and credit concept." (Emphasis in original)), *rev'd,* 65 N.Y.2d 51, 56–57, 489 N.Y.S.2d 713, 716–17, 478 N.E.2d 1314, 1317–18 (1985) (distinguishing between enforcing another state's criminal judgment and recognizing that judgment in a subsequent civil proceeding). With this background in mind, we turn to Gillis's full faith and credit challenge.

Although the United States Supreme Court has not ruled on full faith and credit in the context of successive state criminal prosecutions, the United States Court of Appeals for the Eighth Circuit has addressed this issue, albeit, with limited discussion. In *Turley v. Wyrick,* 554 F.2d 840 (8th Cir.1977), *cert. denied,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780 (1978), the Eighth Circuit considered whether full faith and credit foreclosed a subsequent robbery prosecution by the State of Missouri after the defendant was acquitted in a federal court of violating a federal bank robbery statute. In

the state trial court, the defendant moved to dismiss the robbery charge, "alleging that his prior federal acquittal barred subsequent [state] prosecution arising out of the same act"; however, this motion was denied. *Turley*, 554 F.2d at 841. Thereafter, the Eighth Circuit considered the defendant's habeas challenge to the denial of his motion to dismiss. After disposing of the defendant's double jeopardy and collateral estoppel arguments, the court summarily rejected his argument that Missouri could not prosecute him because it was "bound to observe the federal acquittal by virtue of the full faith and credit clause." *Id.* Noting that the defendant's contention was "as unpersuasive as it [was] novel," the *Turley* court explained that the federal judgment merely acquitted the defendant of violating federal law, but it did not determine whether Missouri law was violated. *Turley*, 554 F.2d at 842. The court concluded that "[t]here was thus no denial of full faith and credit." *Id.* We find *Turley* persuasive, and believe that the judgment acquitting Gillis of murder under Delaware law has no impact on his culpability under Maryland's murder statute (Article 27, § 407).

 In essence, Gillis argues that the Delaware judgment determined that he did not murder Parker, and thus Maryland cannot relitigate the issue. We recognize the general principle that, to satisfy the mandate of full faith and credit, courts must give the same preclusive effect to another state court's judgment that the judgment would receive in the state from which it emerged. *See Underwriters Nat'l Assurance Co. v. N.C. Life & Acc., Etc.*, 455 U.S. 691, 704, 102 S.Ct. 1357, 1365, 71 L.Ed.2d 558, 570 (1982); *Weinberg*, 299 Md. at 234, 473 A.2d at 27. Regardless of that effect, however, an accepted principle is that estoppel will not be invoked against an individual or his privy who was never afforded the opportunity to be heard on the particular issue or cause of action. *See Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308, 313 (1980); *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552, 559 n. 7 (1979); *Blonder–Tongue Lab., Inc. v. University of Illinois Found.*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788, 800 (1971). *See also Standefer v. United States*, 447 U.S. 10,

22, 100 S.Ct. 1999, 2007, 64 L.Ed.2d 689, 699 (1980) (noting that a " 'full and fair opportunity to litigate' . . . is a prerequisite of estoppel").

Since the State of Maryland has not yet been afforded the opportunity to litigate whether Gillis violated its criminal laws, that opportunity ought not be denied on the basis of a misplaced application of the Full Faith and Credit Clause. As recognized by the Court of Appeals of New York in *People v. Reisman*, 29 N.Y.2d 278, 285, 327 N.Y.S.2d 342, 348, 277 N.E.2d 396, 400 (1971), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1315, 31 L.Ed.2d 582 (1972), "[i]dentity of the prosecuting party is an indispensable precondition to the invocation of . . . estoppel. . . ." [4] The *Reisman* court thus rejected the defendant's argument that, based on full faith and credit, the granting of a suppression motion in California required New York to also suppress that evidence. *Id.* *Cf. Carr v. Lanagan*, 50 F.Supp. 41, 43 (D.Mass.1943) (rejecting defendant's full faith and credit argument and noting that even if defendant was punished for Massachusetts crime involving same subject matter as Rhode Island offense, "Rhode Island and Massachusetts being separate sovereignties, have the power to deal with it separately"); *United States v. Robinson*, 74 F.Supp. 427, 430 (W.D.Ark.1947) (finding Full Faith and Credit Clause inapplicable where defendant argued his sentence for federal offense should be served concurrently with a state sentence based upon parole violation arising from commission of the same offense).

---

**4.** At least one commentator has recognized that "the prosecuting authority exists in only one forum. If it loses, it may be bound in that forum, but there usually is no full faith and credit effect against it in a second forum, since the prosecuting authority normally is not found there. A victory over the prosecuting authority by the defendant in forum I generally cannot be carried into a second forum and presented as preclusive against a second prosecuting authority. The prosecuting authority in forum II *has never had his day in court* on the issue and cannot be precluded." Allan D. Vestal, *Criminal Prosecutions: Issue Preclusion and Full Faith and Credit*, 28 Kan.L.Rev. 1, 23 (1979). (emphasis added). *But see* Marc Martin, *Heath v. Alabama: Contravention of Double Jeopardy and Full Faith and Credit Principles*, 17 Loy. U.Chi.L.J. 721 (1986) (arguing that full faith and credit principles should preclude dual sovereignty prosecutions despite judicial "obstacles" that might suggest a contrary result).

Gillis points to *Farmland Dairies v. Barber*, 65 N.Y.2d 51, 489 N.Y.S.2d 713, 478 N.E.2d 1314 (1985), in support of his contention that full faith and credit bars the Maryland prosecution. *Barber*, however, is inapposite to the instant case. In *Barber*, the Court of Appeals of New York addressed whether full faith and credit mandated recognition, in a New York administrative proceeding, of a condition contained in a New Jersey criminal judgment which provided that the judgment could not be used as evidence in any pending or future civil proceeding. *Barber*, 65 N.Y.2d at 53, 489 N.Y.S.2d at 714, 478 N.E.2d at 1315. The court held that the condition contained in the judgment had to be recognized in the administrative proceeding, and thus a New York licensing agency could not use the criminal judgment as evidence of the underlying misconduct. *Id.* Here, we are not asked to recognize the validity of a condition contained in a criminal judgment in a subsequent civil proceeding; rather, we are asked to accept the Delaware acquittal as a conclusive determination that Gillis did not violate Maryland's criminal laws by murdering Parker. Moreover, the Court of Appeals of New York's decision in *Reisman* is more directly on point than the decision in *Barber*.

██ Our conclusion that full faith and credit does not bar the Maryland prosecution finds further support in those cases discussing collateral estoppel. Collateral estoppel "means simply that when [an] issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970). This Court discussed the impact of collateral estoppel on successive prosecutions of the same defendant by different states in *Bailey v. State*, 303 Md. 650, 496 A.2d 665 (1985). In *Bailey*, the defendant was first convicted in New Jersey of receiving stolen goods and was then charged in Maryland with robbery involving the same goods. 303 Md. at 660, 496 A.2d at 670. The defendant argued that the New Jersey conviction established that he was only a receiver, not the robber. *Id.* This Court, however,

refused to apply collateral estoppel, reasoning that "collateral estoppel can have no application because different parties were adverse to [the defendant] in the New Jersey and Maryland prosecutions." *Id.* (applying the "between the same parties" requirement of *Ashe v. Swenson,* 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475). *See also State v. Brown,* 2 Ohio App.3d 321, 322–23, 2 Ohio B. 364, 365–366, 441 N.E.2d 1126, 1127 (1981) (concluding that defendant's collateral estoppel contention, based on prior acquittal in Kentucky, was "unavailing because the same parties are not involved in the Ohio prosecution as were involved in the Kentucky trial. Ohio was not present in the first proceeding in any binding way . . . ."). Likewise, Maryland cannot be estopped from attempting to prove Gillis's culpability under its law, despite Gillis's reliance on the Full Faith and Credit Clause.[5]

---

5. The limited doctrine of nonmutual collateral estoppel has been recognized in some civil cases. *See, e.g., Blonder–Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Under that doctrine, an adverse determination against a party in prior litigation may preclude that party from relitigating issues in a subsequent case involving a different adversary. Notwithstanding the abandonment of strict mutuality, that doctrine has no relevance here because Maryland obviously was not a party to, and did not participate in, the Delaware prosecution. Thus, although issues may have been determined adversely to Delaware, no issue has been previously resolved against the State of Maryland upon which Gillis may rely. Additionally, nonmutual collateral estoppel has been deemed inappropriate in criminal cases because of the government's important interest in the enforcement of its criminal laws. *See Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980); *Carbaugh v. State,* 294 Md. 323, 329–30, 449 A.2d 1153, 1156–57 (1982). *See also Butler v. State,* 91 Md.App. 515, 532 n. 9, 605 A.2d 186, 194 n. 9 ("Nonmutual collateral estoppel, whatever its future elsewhere, will not apply to criminal cases."), *cert. granted,* 328 Md. 35, 612 A.2d 897 (1992); *United States v. Espinosa–Cerpa,* 630 F.2d 328, 331 (5th Cir. 1980) (noting *Standefer's* rejection of "the applicability of nonmutual collateral estoppel to criminal cases"). The Supreme Court in *Standefer* rejected the defendant's argument that a prior acquittal of the alleged perpetrator of an offense prevented the federal government from relitigating the perpetrator's guilt which was an element of the offense with which the defendant was charged (aiding and abetting). *Standefer,* 447 U.S. at 21–22, 100 S.Ct. at 2007, 64 L.Ed.2d at 699. The Court reached this result even though the issue (the perpetrator's guilt) had been determined adversely to the federal government in the prior

■ Although we decline to base our decision on the lack of Delaware's jurisdiction over the murder, we point out that the judgment of a particular state need not be given full faith and credit if that state did not have jurisdiction to render such judgment. *See Underwriters Nat'l Assurance Co.,* 455 U.S. at 704–05 & n. 10, 102 S.Ct. at 1366 & n. 10, 71 L.Ed.2d at 570–71 & n. 10; *Mack v. Mack,* 329 Md. 188, 198, 618 A.2d 744, 749 (1993) ("A court, for example, need not give full faith and credit to a judgment that was rendered by a court lacking jurisdiction."); *Van Wagenberg v. Van Wagenberg,* 241 Md. 154, 160, 215 A.2d 812, 815, *cert. denied,* 385 U.S. 833, 87 S.Ct. 73, 17 L.Ed.2d 68 (1966). Whether Delaware had subject matter jurisdiction to prosecute Gillis for murder is questionable. After the Delaware acquittal of Gillis, Parker's body was found in Kent County, Maryland, "approximately three-fourths of a mile west of the Maryland–Delaware line, as the crow flies," and "approximately four miles southeast from the [state] line when travelling by road." This "raises a presumption, or supports the inference," that the killing took place in Maryland. *Breeding v. State,* 220 Md. 193, 200, 151 A.2d 743, 747 (1959). In addition, the Supreme Court of Delaware has acknowledged that the proper exercise of jurisdiction in Delaware requires the prosecution to "establish that [the] legal situs of the offense was in Delaware." *Sheeran v. State,* 526 A.2d 886, 890 (Del.1987). *See also* Del.Code Ann. tit. 11,

---

case. *Id.* at 22, 100 S.Ct. at 2007, 64 L.Ed.2d at 699. *Standefer,* like *Heath,* emphasizes the importance of permitting a government to enforce its criminal laws.

We need not decide whether there are any conceivable circumstances when there might be issue preclusion as the result of a criminal prosecution in another state. *See* Vestal, *supra,* 28 Kan.L.Rev. at 9–24 (discussing interjurisdictional issue preclusion in the context of criminal prosecutions). We note that, in the instant case, it is unclear what issues were resolved against the State of Delaware by Gillis's acquittal. In the agreed statement of facts, Gillis and the State concede that "[t]here was no indication by the Delaware jury that Gillis's Delaware acquittal occurred because Delaware lacked subject matter jurisdiction to prosecute Gillis for Parker's murder." Since Parker's body had not been found at the time of the Delaware prosecution, the jury may have acquitted Gillis because there was either insufficient evidence of Gillis's criminal agency or insufficient evidence that any crime occurred in Delaware. *See* Del.Code Ann. tit. 11, § 204 (1987).

§ 204 (1987) (setting out territorial jurisdiction requirements, and providing jurisdiction if either death or the bodily impact causing death occurred in Delaware). If the prosecution does not meet this threshold burden of proof, then the Delaware court would lack jurisdiction to properly decide the case. Absent Delaware's jurisdiction to render judgment, Maryland would not be required to accord full faith and credit to such judgment in a subsequent murder prosecution.

### III.

Ultimately, we must agree with the Eighth Circuit's comment in *Turley*—Gillis's full faith and credit argument is "as unpersuasive as it is novel." *Turley,* 554 F.2d at 842. Using the Full Faith and Credit Clause so as "[t]o deny [Maryland] its power to enforce its criminal laws because [Delaware] has won the race to the courthouse 'would be a shocking and untoward deprivation of the historic right and obligation of the States to maintain peace and order within their confines.'" *Heath,* 474 U.S. at 93, 106 S.Ct. at 440, 88 L.Ed.2d at 397 (quoting *Bartkus,* 359 U.S. at 137, 79 S.Ct. at 685, 3 L.Ed.2d at 694). Notwithstanding the Delaware acquittal, the Maryland prosecution may continue.

*JUDGMENT OF THE CIRCUIT COURT FOR KENT COUNTY AFFIRMED. COSTS IN THIS COURT TO BE PAID BY APPELLANT.*

ELDRIDGE, Judge, dissenting:

In my view, the Maryland murder prosecution was precluded by common law double jeopardy principles and Article 5 of the Maryland Declaration of Rights. See my dissenting opinion in *Evans v. State,* 301 Md. 45, 58–61, 481 A.2d 1135, 1141–1143 (1984), *cert. denied,* 470 U.S. 1034, 105 S.Ct. 1411, 84 L.Ed.2d 795 (1985), with which I continue to adhere. *See also Bailey v. State,* 303 Md. 650, 664, 496 A.2d 665, 672 (1985) (Eldridge, J., dissenting).

Because I believe that the motion to dismiss should have been granted on double jeopardy grounds, I do not reach the defendant's argument based on the Full Faith and Credit Clause of the federal constitution.