599 A.2d 428
Clinton R. **HUFF**
v.
**STATE of Maryland.**
**No. 16 Sept. Term, 1991.**
Court of Appeals of Maryland.
Dec. 20, 1991.

George E. Burns, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Valerie J. Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief) Baltimore, for respondent.

Argued before ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

The principal issue presented by this motor vehicle manslaughter case concerns immediate appeals from orders denying dismissals sought on double jeopardy grounds. The question is whether immediate appeals of those orders lie from the District Court of Maryland to a circuit court. As explained below, we shall answer in the negative.

Petitioner, Clinton R. Huff (Huff), on February 26, 1990, was operating a motor vehicle on Maryland Route 312 near Ridgely in Caroline County. Huff's vehicle was involved in a collision with another vehicle. One of his passengers, an adult in the rear seat, died in the collision. Huff was hospitalized. No criminal charges were issued immediately following the accident.

On April 11, 1990, the Maryland State Police trooper who investigated the accident presented a single application for a statement of charges to a commissioner of the District Court of Maryland. The police officer averred under oath that a consensual blood alcohol test administered to Huff revealed a level of 0.20%. The trooper requested that the commissioner charge Huff with the following offenses:

Homicide by motor vehicle while intoxicated in violation of Md.Code (1957, 1987 Repl.Vol., 1991 Cum.Supp.), Art. 27, § 388A;

Driving while intoxicated (DWI) in violation of Md.Code (1977, 1987 Repl.Vol.), § 21–902(a) of the Transportation Article (TA);

Driving a motor vehicle on a revoked license in violation of TA § 16–303;

Negligently driving a motor vehicle in violation of TA § 21–901.1(b);

Stopping, parking, or leaving a vehicle standing on the traveled portion of a highway outside of a business or residential district, in violation of TA § 21–1001(a);

Huff's failure to be restrained by a seat belt in violation of TA § 22–412.3(b); and

Transporting a child three to five years old without a child safety seat in violation of TA § 22–412.2(e).

In response the commissioner issued two charging documents and two warrants that same day, one set charging Art. 27 offenses, and the other charging offenses under the Transportation Article. The charging document under Art. 27 charged manslaughter by automobile in violation of § 388, in addition to homicide by motor vehicle while intoxicated under § 388A.[1] The statement of charges alleging negligent driving in violation of TA § 21–901.1(b) advised that the preset fine for that offense was $45. The next day, April 12, Huff was arrested and, a few days later, released on bail. Trial was set for August 27, 1990, in the District Court.

At no time did Huff exercise, or attempt to exercise, his right to a jury trial. See Md.Code (1974, 1989 Repl.Vol.), § 4–302(e)(1) and (2)(i) of the Courts and Judicial Proceedings Article (CJ).[2]

---

1. Huff has not made any point of the fact that the application for charges did not aver a violation of § 388. Consequently, we intimate no opinion on that aspect of the procedure in this case.

2. CJ § 4–302(e)(1) and (2)(i) in relevant part read:

On August 14, 1990, this Court decided *Gianiny v. State,* 320 Md. 337, 577 A.2d 795. There we held that Gianiny's payment of the preset fine for negligent driving operated as a conviction, and that, for double jeopardy purposes, it was "immaterial that that conviction did not result from a trial or from acceptance of a guilty plea[.]" *Id.* at 346, 577 A.2d at 799.

Two days after *Gianiny* was decided and eleven days before trial in the District Court of the charges against him, Huff paid the preset fine on the negligent driving charge.

The parties appeared in the District Court on the date set for trial.[3] At some point during the District Court hearing the State nol prossed the charges of stopping, parking, or leaving a vehicle standing on the highway outside of a business or residential district, failure to use a seat belt, and failure to use a child's car seat. Huff moved to dismiss the manslaughter and homicide by motor vehicle while intoxicated charges. He claimed that his conviction of negligent driving, effected by payment of the preset fine, barred conviction for any of the Art. 27 offenses. The District Court denied Huff's motion to dismiss. Huff then apparently announced an intent to pursue an immediate appeal to the Circuit Court for Caroline County. The District Court thereupon discontinued proceedings, and did not try any of the charges on the merits.

The matter came on before Judge J. Frederick Price in circuit court on October 10, 1990. The State agreed with

---

"(1) The District Court is deprived of jurisdiction if a defendant is entitled to and demands a jury trial at any time prior to trial in the District Court.

"(2)(i) [U]nless the penalty for the offense with which the defendant is charged permits imprisonment for a period in excess of ninety days, a defendant is not entitled to a jury trial in a criminal case."

Automobile manslaughter carries a maximum confinement of ten years. Art. 27, § 388.

3. The record does not contain a transcript of the proceedings in the District Court. The parties agreed, however, before the circuit court on the substance of what transpired in the District Court.

Huff's counsel that the only issue before the court was the effect of the payment of the negligent driving fine on the manslaughter and homicide charges. The court refused to dismiss those charges on double jeopardy grounds. Judge Price then directed that Huff's appeal be set in for trial on the merits, before a jury, as an appeal from the District Court. Huff objected, without success, to that announced procedure.

Subsequently Huff filed a written motion to dismiss or to remand to the District Court, arguing that only the ruling of the District Court on his motion to dismiss on double jeopardy grounds had been appealed to the circuit court. That motion was heard by Judge J. Owen Wise on December 5, 1990, and denied.

Trial on the merits was held before Judge Wise on December 28, 1990. The parties had entered into an agreement pursuant to which the State nol prossed the manslaughter charge, and the parties proceeded without a jury on a not guilty, agreed statement of facts. Judge Wise found Huff guilty of homicide, DWI and driving on a revoked license. Subsequently sentence was imposed.

Huff petitioned this Court for the writ of certiorari which we granted. His petition presents three questions:

"1. Was this case properly before the Circuit Court when Petitioner had neither prayed a jury trial nor had been tried in the District Court?

"2. Was the charge of homicide by motor vehicle while intoxicated barred by the principle of double jeopardy?

"3. Was the evidence insufficient to support a finding of homicide by motor vehicle while intoxicated?"

I

In his brief in this Court Huff, agreeing with the position taken by his trial counsel, asserts that the appeal to the circuit court was limited to the double jeopardy issue alone. The State, disagreeing with the position of the State's Attorney in the circuit court, argues that the District

Court's denial of dismissal on double jeopardy grounds was not immediately appealable, primarily because the collateral order doctrine does not apply to de novo appeals from the District Court to a circuit court. At oral argument in this Court Huff seemingly agrees that the immediate appealability of denials of the double jeopardy protection against a second prosecution for the same offense after conviction rests on the collateral order doctrine, but Huff has not clearly taken any position on whether the collateral order doctrine applies to de novo appeals from the District Court. Neither party advocates the circuit court's position, namely that Huff's notice of appeal brought to the circuit court both the denial of the double jeopardy defense and, if that defense were again denied, then the balance of the cause for trial de novo on the merits.

### A

■ There is a narrow class of orders from which this Court permits immediate appeals even though the orders are not final judgments. Generally those orders must conclusively determine the disputed question, resolve an important issue, be completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. *See Bunting v. State*, 312 Md. 472, 476–77, 540 A.2d 805, 807 (1988). The appealability of orders meeting those requirements is the collateral order doctrine. We have referred to the collateral order doctrine as an "exception to the final judgment rule." *Parrott v. State*, 301 Md. 411, 414, 483 A.2d 68, 69 (1984).

This Court has "recognized that, under the collateral order doctrine, a defendant may take an immediate appeal from the denial of a motion to dismiss on the ground of double jeopardy." *Bunting v. State*, 312 Md. at 477–78, 540 A.2d at 807. For that proposition *Bunting* cited primarily to *Parrott* and secondarily to *Russell v. State*, 310 Md. 96, 98 n. 1, 527 A.2d 34, 34 n. 1 (1987); *Robinson v. State*, 307 Md. 738, 741 n. 2, 517 A.2d 94, 96 n. 2 (1986); *Huffington v. State*, 302 Md. 184, 187 n. 2, 486 A.2d 200,

202 n. 2 (1985); *Evans v. State,* 301 Md. 45, 49 n. 2, 481 A.2d 1135, 1137 n. 2 (1984); *Bowling v. State,* 298 Md. 396, 401 n. 4, 470 A.2d 797, 799 n. 4 (1984); and *In re Mark R.,* 294 Md. 244, 246 n. 2, 449 A.2d 393, 395 n. 2 (1982). The cases secondarily cited did not articulate the basis for the immediate appealability of orders denying a double jeopardy defense. Their citation in *Bunting* places appealability on the foundation of the collateral order doctrine.

*Bunting*'s primary citation to *Parrott* is not to *Parrott*'s precise holding, but to the reasoning which was essential to that holding. In *Parrott,* we denied an immediate appeal from an order granting removal for trial from one circuit court to another of a capital punishment murder case that had been removed pursuant to the absolute right granted under Maryland Constitution, art. IV, § 8. Parrott predicated his interlocutory appeal on a line of Maryland cases, going back at least to *Condon v. Gore,* 89 Md. 230, 42 A. 900 (1899), which permitted an immediate appeal from any order that settled a constitutional right. *Parrott*'s reasoning traced how, following recognition by the Supreme Court of the collateral order doctrine in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), two lines of cases developed in this Court explaining immediate appealability of interlocutory orders, absent an interlocutory appeal statute, one based on the constitutional right doctrine and the other on the collateral order doctrine. With respect to claimed denials of double jeopardy protection, we referred to *Neal v. State,* 272 Md. 323, 322 A.2d 887 (1974), which permitted an immediate appeal from such a denial on the basis that the claimed denial of an absolute federal constitutional right was involved. *Parrott* noted that, after *Neal* was decided, the United States Supreme Court applied the collateral order doctrine to the denial of a double jeopardy defense. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977). We said in *Parrott* that "[t]he result *Neal* reached by way of the absolute constitutional right analysis is the

same as *Abney* reached by applying the collateral order doctrine." 301 Md. at 422, 483 A.2d at 73.

Turning to appeals from refusals to dismiss charging documents attacked for denial of a speedy trial, *Parrott* reviewed how this Court had initially permitted immediate appeals in such cases under the constitutional right doctrine, see *Jones v. State,* 241 Md. 599, 217 A.2d 367 (1966) and *Harris v. State,* 194 Md. 288, 71 A.2d 36 (1950), and how, following the Supreme Court's denial of immediate appealability in speedy trial cases under the collateral order doctrine, see *United States v. MacDonald,* 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978), this Court in *Stewart v. State,* 282 Md. 557, 386 A.2d 1206 (1978), similarly used the collateral order doctrine analysis to deny immediate appealability in speedy trial cases.

*Parrott* concluded by saying:

"[I]n *Stewart* ... we applied the collateral order doctrine and overruled contrary earlier holdings of this Court which looked to the absolute constitutional right mode of analysis. *Stewart* necessarily stands for the proposition that the collateral order doctrine controls and that whether an interlocutory appeal lies is not determined by whether a claimed constitutional right has been denied or settled. Because the order of removal appealed from in this case is not a final judgment and does not fall within the collateral order doctrine exception, we dismiss[ ] Parrott's appeal."

301 Md. at 426, 483 A.2d at 75.

In the matter before us the District Court's denial of the motion to dismiss on double jeopardy grounds is not a final judgment, in the sense that it does not terminate the prosecution. There is no statute which confers the right to appeal from District Court interlocutory orders, as such. *Cf.* CJ § 12–303. Huff did not remove the case from District Court jurisdiction by a prayer for jury trial. The only basis on which the District Court's interlocutory ruling might be immediately appealable is if the collateral order

doctrine applies. All of the cases, however, in which we have recognized immediate appeals of interlocutory orders as final judgments under the collateral order doctrine have involved appeals from circuit courts to the appellate courts. Those appeals were appeals on the record made in a circuit court. Appeals in criminal cases from the District Court to a circuit court are de novo, unless the parties agree to proceed on the record. CJ § 12–401(d).[4] The question here is whether we should recognize the collateral order doctrine as part of the right to appeal de novo from the District Court.

Perhaps the strongest argument supporting immediate appealability in the instant case is that the right of appeal from trial courts of general jurisdiction, in both civil and criminal cases, is conferred "from a final judgment." CJ § 12–301. This Court, in effect, has construed "final judgment" in CJ § 12–301 to include collateral order doctrine appeals. The right of appeal from the District Court is conferred on "[a] party in a civil case or the defendant in a criminal case ... from a final judgment." CJ § 12–401(a). Seemingly, the term "final judgment" in § 12–401(a) should have the same meaning as it does in § 12–301.

That analysis fails, however, to give due regard to the context surrounding the appeal. CJ § 12–101(f) defines "final judgment" to mean "a judgment, decree, sentence, order, determination, decision, or other action by a court ... from which an appeal, application for leave to appeal, or petition for certiorari may be taken." The Courts and Judicial Proceedings Article, a product of the Code revision project, was enacted by the Acts of 1973, First Special

---

4. CJ § 12–401(d) provides in relevant part:

"In a civil case in which the amount in controversy exceeds $2,500 exclusive of interest, costs, and attorney's fees ... and in any case in which the parties so agree, an appeal shall be heard on the record made in the District Court. In every other case, including a criminal case in which sentence has been imposed or suspended following a plea of nolo contendere or guilty, and an appeal in a municipal infraction or Code violation case, an appeal shall be tried de novo."

Session, ch. 2. The Revisor's Note to § 12–101(f) states that "[t]his definition does not attempt to specify what is an appealable final order. That is left to case law, as at present." Md.Code (1974), CJ, at 319.

There is no Maryland case law directly deciding the question before us. That void is understandable. The Maryland Constitution contains no express prohibition against double jeopardy. The prohibition against double jeopardy in the United States Constitution was not express-ly recognized by the Supreme Court to extend to the states through the fourteenth amendment until 1969. *See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Thus, in the era preceding creation of the District Court of Maryland in 1971, an accused whose double jeopar-dy defense was denied by a justice of the peace, trial magistrate, people's court judge, or municipal judge could not have invoked the absolute constitutional right basis for an immediate appeal. Indeed, this Court is not aware of any direct appeal which has been allowed from an interlocu-tory order of a trial court of limited jurisdiction, on either the constitutional right or the collateral order analysis, until the recent spate of attempted immediate appeals raising double jeopardy issues in Motor Vehicle Law cases that has been promoted by *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and by *Gianiny v. State*, 320 Md. 337, 577 A.2d 795.

A further explanation for the lack of any practice recog-nizing interlocutory appeals from trial courts of limited jurisdiction, and a reason why the collateral order doctrine should not be judicially incorporated into "final judgment" in CJ § 12–401(a), is the lack of necessity. Where, as here, the double jeopardy defense of the accused in the District Court is based on a prior conviction of a lesser included offense, the greater inclusive offense likely will permit imprisonment for a period in excess of ninety days, so that the accused will have a right to immediate removal to a circuit court by demand for jury trial. CJ § 4–302(e)(1) and (2)(i). In the circuit court the accused could move to dismiss

on double jeopardy grounds. If the motion is denied, the ruling would be immediately appealable under the right conferred by CJ § 12–301, as judicially interpreted to include the collateral order doctrine.

Illustrating the scenario just described is *Block v. State,* 286 Md. 266, 407 A.2d 320 (1979). In that case the District Court found the accused guilty of shoplifting, but deferred sentencing. On reconsideration, the court struck the guilty verdict and entered a finding of not guilty. On further reconsideration the District Court struck the not guilty finding and ordered that the defendant stand for a new trial, instead of reinstating the prior guilty verdict. The defendant then demanded a jury trial, removed the case to the Circuit Court for Montgomery County, and moved to dismiss on the ground that the District Court's finding of not guilty on the first reconsideration barred the new trial. The circuit court denied the motion, and the defendant immediately appealed to the Court of Special Appeals. This Court granted certiorari, recognized the appealability of the denial of dismissal, and ruled on the merits.[5]

There is a more fundamental reason not to apply the collateral order doctrine to de novo appeals from the District Court. The trial de novo of District Court appeals means that the case is tried afresh or anew. The State or the plaintiff must produce that party's evidence a second time. Even if the defendant had the right to remove the case from the District Court by demand for jury trial, and did not do so, the defendant has the right to a jury trial on the de novo appeal. *See Kleberg v. State,* 318 Md. 411, 568 A.2d 1123 (1990); *Hardy v. State,* 279 Md. 489, 369 A.2d 1043 (1977).[6] On the other hand, issues which meet the

---

**5.** *Block* was decided prior to *Parrott v. State,* 301 Md. 411, 483 A.2d 68 (1984). *Block* cited to *Neal v. State,* 272 Md. 323, 322 A.2d 887 (1974), as authority for immediate appealability of the circuit court order. *Block v. State,* 286 Md. at 268 n. 1, 407 A.2d at 321 n. 1.

**6.** Unlike the right to demand a jury trial in the circuit court in the first instance of a criminal prosecution initiated in the District Court,

requisites of the collateral order doctrine are almost universally issues of law. The de novo form of appeal simply is inappropriate for resolution of the kind of issues that trigger the collateral order doctrine.

A problem analogous to that presented here arose in *Kirsner v. State*, 296 Md. 567, 463 A.2d 865 (1983). After his conviction in the District Court Kirsner there filed a motion for a new trial. At that time no rule of court interrupted the running of the time for appeal during the pendency of the motion.[7] When a new trial was denied, the time to appeal from the judgment of conviction had run, but the appeal was in time from the new trial denial. One issue in *Kirsner* was whether the de novo appeal from the District Court applied to an order denying a motion for a new trial. The circuit court dismissed the attempted appeal. We affirmed, on the following rationale:

> "Appeals in criminal matters from the District Court are heard de novo. There is no way that on such an appeal a judge could review to determine whether or not the District Court trial judge had abused his discretion in denying a motion for a new trial. Given the very narrow holding of the Court in the past as to appeals from denials of motions for new trial in the circuit courts and the fact that appeals in District Court matters are heard de novo, we conclude that there is no right of appeal whatsoever from the denial by a District Court judge of a motion for new trial."

296 Md. at 571–72, 463 A.2d at 867 (citation omitted).

Refusing to apply the collateral order doctrine to appeals de novo from the District Court also has the virtue of

which lies if the offense charged permits imprisonment for a period in excess of ninety days, the right to a jury trial on an appeal de novo is available if "the offense charged is subject to a penalty of imprisonment or ... there is a constitutional right to a jury trial for that offense." CJ § 12–401(e).

7. Md.Rule 1312.b, effective July 1, 1984, now provides that the order for appeal shall be filed within thirty days from the entry of an order denying, overruling, or dismissing the motion for a new trial.

avoiding additional complexities. Maryland Rules, ch. 1300, "Appeals from the District Court," was adopted effective July 5, 1971, to coincide with the commencement of operations of the District Court. Rules 1370–1382 address the disposition by the appellate (*i.e.*, circuit) court of those civil cases decided on appeal on the record. Under Rule 1314, dealing with de novo appeals, the action or cause is treated as a case instituted in the circuit court. *See* Rule 1314.a. The result is that the judgment entered in the de novo appeal is not an affirmance of the District Court; it is the judgment of the circuit court in a circuit court case. If the party appealing fails to appear, or abandons the appeal, the circuit court "shall enter as its judgment the same judgment as was entered in the lower court." Rule 1314.c; *Hawkins v. State*, 318 Md. 148, 567 A.2d 109 (1989). Were we to permit appeals from interlocutory orders entered by the District Court, by applying the collateral order doctrine to cases appealable de novo, cases would be split. One issue would be decided by the judgment of a circuit court and, if that judgment were adverse to the appellant, the balance of the case would be decided on the merits by judgment of the District Court, without any mechanism under the present Rules for bringing the two pieces together for any further review.

The system of appeals de novo from the District Court is legislatively mandated. Legislation first introduced to implement the constitutional amendment creating the District Court of Maryland proposed that an appeal from a judgment of that district court in a criminal, motor vehicle or civil case would be heard and decided on the record made in the District Court, as designated by the parties. 1970 Md. Laws 1265. By amendments in the course of passage the General Assembly in essence continued the appeal de novo of the preceding era. Acts of 1970, ch. 528. That predecessor system of appeals basically contemplated appeals after judgment on the merits which bring up the entire case for a retrial. The collateral order doctrine does not have a role to play in that system of appeals.

B

■ Next we consider whether the Maryland or United States constitutions mandate application of the collateral order doctrine to denials of double jeopardy defenses. *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), does not require that result. The Court's discussion of the appealability question in *Abney* opens with the following reminder:

> "First, it is well settled that there is no constitutional right to an appeal. Indeed, for a century after this Court was established, no appeal as of right existed in criminal cases, and, as a result, appellate review of criminal convictions was rarely allowed.... The right of appeal, as we presently know it in criminal cases, is purely a creature of statute; in order to exercise that statutory right of appeal one must come within the terms of the applicable statute—in this case, 28 U.S.C. § 1291."

*Id.* at 656, 97 S.Ct. at 2038 (footnotes and citations omitted). The applicable statute, 28 U.S.C. § 1291, provides in relevant part that "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States[.]"

Prior to *Abney* the Court had applied the collateral order doctrine to determine whether a given order was a "final decision" for purposes of 28 U.S.C. § 1291. *Abney* was concerned with whether the denial of a claimed defense of double jeopardy fell within the collateral order doctrine. *Abney* held that it did. "[T]here can be no doubt that such orders constitute a complete, formal, and, in the trial court, final rejection of a criminal defendant's double jeopardy claim." *Id.* at 659, 97 S.Ct. at 2040. "[T]he very nature of a double jeopardy claim is such that it is collateral to, and separable from the principal issue at the accused's impending criminal trial, *i.e.*, whether or not the accused is guilty of the offense charged." *Id.* Finally, the Court emphasized that double jeopardy is a "guarantee against being twice put to *trial* for the same offense." *Id.* at 661, 97 S.Ct. at 2041 (footnote omitted).

" 'The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' "

*Id.* at 661–62, 97 S.Ct. at 2041 (quoting *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957)). "Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." *Abney*, 431 U.S. at 662, 97 S.Ct. at 2041.

The last quoted sentence is not the recognition of a mandate under the fifth amendment for immediate appeal of double jeopardy questions. It is an explanation of why double jeopardy issues meet one of the criteria of the collateral order doctrine, because "rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence." *Abney*, 431 U.S. at 660, 97 S.Ct. at 2040–41.

In *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), the Court described *Abney* as involving a claim that "met the three-part test established in *Cohen v. Beneficial Industrial Loan Corp.*, [337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) ] because a double jeopardy claim contested the very power of the Government to bring a person to trial, and the right would be significantly impaired if review were deferred until after the trial." 468 U.S. at 320, 104 S.Ct. at 3083. In *Richardson* the Court then undertook an analysis of the collateral nature of the double jeopardy claim there presented, and held that it was sufficiently collateral to satisfy the collateral order doc-

trine. That analysis would have been unnecessary if the interest under the double jeopardy clause in avoiding the second trial was sufficient, in itself, to mandate a procedure for an immediate appeal of a double jeopardy claim.

Some state courts, after considering the *Abney* rationale, have concluded that an immediate appeal from the denial of a double jeopardy defense is not required. *Burleson v. State*, 552 So.2d 186 (Ala.Crim.App.1989); *People ex rel. Mosley v. Carey*, 74 Ill.2d 527, 25 Ill.Dec. 669, 387 N.E.2d 325, *cert. denied*, 444 U.S. 940, 100 S.Ct. 292, 62 L.Ed.2d 306 (1979); *State v. Fisher*, 2 Kan.App.2d 353, 579 P.2d 167 (1978); *State v. Joseph*, 92 N.C.App. 203, 374 S.E.2d 132 (1988), *cert. denied*, 324 N.C. 115, 377 S.E.2d 241 (1989); *State v. Miller*, 289 S.C. 426, 346 S.E.2d 705 (1986). At least two courts have said that an immediate appeal is constitutionally required. *See State v. Choate*, 151 Ariz. 57, 725 P.2d 764 (Ariz.App.1986) (holding interlocutory appeal constitutionally mandated by citation to *Abney*, without further discussion) and *Ex parte Robinson*, 641 S.W.2d 552 (Tex.Crim.App.1982) (premising immediate appeal on fifth amendment). Other courts, after discussing the issue, have concluded that a direct appeal or other form of review was available under state law and did not decide the constitutional question. *County Court of El Paso v. Ruth*, 194 Colo. 352, 575 P.2d 1 (1978); *Commonwealth v. Chatfield–Taylor*, 399 Mass. 1, 502 N.E.2d 512 (1987); *State v. Milenkovich*, 236 Neb. 42, 458 N.W.2d 747 (1990); *State v. Janvrin*, 121 N.H. 370, 430 A.2d 152 (1981); *State v. Jenich*, 94 Wis.2d 74, 288 N.W.2d 114 (1980).

That *Abney* does not constitutionally mandate interlocutory appeals is confirmed by an opinion by Justice Brennan, joined by Justice Marshall, dissenting from the denial of certiorari in *Spradling v. Texas*, 634 S.W.2d 89 (Tex.App.), *cert. denied*, 455 U.S. 971, 102 S.Ct. 1482, 71 L.Ed.2d 686 (1982). That opinion also suggests an argument for constitutionally mandated immediate appeals on other than fifth amendment grounds. The petitioner in *Spradling* argued that a Texas procedural rule barring interlocutory review of

the denial of a double jeopardy defense, coupled with the denial in petitioner's case of leave to apply for a writ of prohibition, operated to deny petitioner's constitutional rights. In opposition to certiorari, Texas argued that *Abney* was merely an exercise by the Court of its supervisory power over federal criminal prosecutions. Justice Brennan said:

> "It is true that the Court had no need to reach the constitutional question presented in the instant case when it decided *Abney*, but the Court's recognition in *Abney* that double jeopardy claims not considered prior to trial are rendered, in significant part, moot surely has significant constitutional overtones. We have never held that the Federal Constitution requires that a State provide appellate review. But once such review is provided, it may not be denied arbitrarily without violating the Equal Protection Clause. Fundamental precepts of due process require a right to be heard 'at a meaningful time' before suffering a grievous loss. Thus, there is surely a good deal of force to petitioner's argument that, if the State provides for appeals to protect other constitutional rights, it runs afoul of the Federal Constitution when it fails to give the same meaningful consideration to a defendant asserting his right not to be subjected to a second trial for the same offense."

455 U.S. at 973, 102 S.Ct. at 1483 (citations omitted).

There is a rational basis for allowing appeals under the collateral order doctrine to litigants in the circuit courts while denying that doctrine to litigants in cases appealable de novo from the District Court. Although, as with any legislative body's determination on an issue, individual legislators may have their individual motives, the historical reason most frequently assigned for perpetuating de novo appeals, following the creation of the District Court of Maryland, is to enable persons who could not afford a transcript of the record the opportunity to have adverse judgments rendered by the District Court subject to a second look. That is a legitimate State interest.

Nor does due process require the State to provide an immediate appeal in these District Court cases. As we have explained above, in most instances in which the defendant in a criminal case in the District Court wants the availability of an immediate appeal of a ruling on a nonfrivolous double jeopardy defense, that defendant will be able to demand a jury trial, remove the case to the circuit court, obtain a ruling there, and, if adverse, have a right of immediate appeal to the Court of Special Appeals. The problem under consideration concerns only the criminal defendant in the District Court who raises a double jeopardy defense there from which the defendant desires an immediate appeal, to be decided by a circuit court, without right to further review, and who, at the same time, seeks to preserve trial in the District Court on the merits if the defense fails.

The due process reality is that there is no significant motions practice in the District Court. Typically, a pretrial motion, if any, is heard on the date and at the time assigned for trial of the case. The practical result of not providing immediate appeals in District Court cases is that the case ordinarily can be tried and decided on the merits in less time than it would take for the Clerk of the District Court to transmit the case to the Clerk of a circuit court, had the District Court ruling on motion been immediately appealable.

Similarly, the defendant's interest in avoiding a second trial is not unconstitutionally infringed if state procedure does not provide an immediate appeal. In many minor cases a District Court prosecution does not ordinarily subject the defendant to "embarrassment, expense and ordeal," or compel the defendant "to live in a continuing state of anxiety and insecurity," to the degree contemplated in *Green v. United States,* 355 U.S. at 187, 78 S.Ct. at 223. In cases in which the District Court prosecution is for a crime serious enough to approach that degree, the defendant "at any time prior to trial in the District Court" can pray a jury trial and obtain the direct appeal.

## C

■■■ Because we hold that the collateral order doctrine does not apply to de novo appeals from the District Court, Huff's appeal in the instant cause was not before the Circuit Court for Caroline County.  Consequently, there is no legal effect to the circuit court's denial of Huff's motion to dismiss the homicide by motor vehicle while intoxicated charge.  It remained pending against Huff in the District Court.  Accordingly, we shall order this cause remanded to the District Court for further proceedings on all pending charges.[8]

On the same reasoning, there is no legal effect to the judgment of conviction entered against Huff in the Circuit Court for Caroline County.  As a result, we are not obliged to decide either the merits of the denials by both trial courts of Huff's double jeopardy contention, or Huff's insufficient evidence argument.  Nevertheless, because the double jeopardy contention raised here is a recurring issue, we shall express our views on its merits.

## II

■■■ "[T]he Double Jeopardy Clause prohibits successive prosecutions as well as cumulative punishment," for the same offense.  *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187, 195 (1977) (footnote omitted). Under the Maryland common law of double jeopardy, a defendant "could not be put in jeopardy again for the same offense—in jeopardy of being convicted of a crime for which he had been acquitted [the plea of *autrefois acquit* ]; in jeopardy of being twice convicted and punished for the same crime [the plea of *autrefois convict* ]." *Gianiny v. State,* 320 Md. at 347, 577 A.2d at 800.  A "greater offense is ... by definition the 'same' for purposes of double

---

8.  We intimate no opinion on the effect of the circuit court's lack of appellate jurisdiction on the nol pros in the circuit court of the manslaughter charge.

jeopardy as any lesser offense included in it." *Brown v. Ohio,* 432 U.S. at 168, 97 S.Ct. at 2226–27.

■ Negligent driving is a lesser included offense within the greater offense of homicide by motor vehicle while intoxicated under Art. 27, § 388A. *Webber v. State,* 320 Md. 238, 577 A.2d 58 (1990). Huff's payment of the preset fine for negligent driving constituted a conviction on that charge. *Gianiny v. State,* 320 Md. at 344–47, 577 A.2d at 798–800. From all of the foregoing Huff concludes, citing *Brown v. Ohio,* that the homicide charge against him is barred.[9]

In *Brown v. Ohio,* the defendant had been convicted of "joy-riding," or unauthorized use of a motor vehicle. Subsequently the defendant was charged with the greater inclusive offense of auto theft. The two offenses were the same for double jeopardy purposes. The Court held that "[w]here the judge is forbidden to impose cumulative punishment for two crimes at the end of a single proceeding, the prosecutor is forbidden to strive for the same result in successive proceedings." 432 U.S. at 166, 97 S.Ct. at 2226.

In the matter before us the prosecution is not successive. Here there is but a single prosecution for multiple offenses. The application for a charging document was made for all of the charges at the same time. The charging documents and warrants were issued at the same time, and served at the same time. All of the charges were set for trial at the same time.[10]

---

**9.** If the manslaughter charge remains viable, this argument would apply to that charge as well. Negligent driving is a lesser included offense within the greater offense of manslaughter by automobile. *Gianiny,* 320 Md. at 343, 577 A.2d at 797.

**10.** It is immaterial to the double jeopardy analysis that the Art. 27 charges were set forth on a piece of paper separate from the paper containing the Transportation Article charges. *See Schrimsher v. State,* 325 Md. 88, 599 A.2d 444 (1991). Charges under the Motor Vehicle Law of the Transportation Article are centrally computer

Consequently, Huff's double jeopardy argument fails in the face of *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). Johnson was charged with murder, involuntary manslaughter, aggravated robbery, and theft in a single prosecution. Over objection by the state, the court accepted Johnson's pleas of guilty to involuntary manslaughter and theft. Thereupon, the court granted Johnson's motion to dismiss the murder and aggravated robbery charges on the theory that Johnson had already been convicted of lesser included offenses. The Supreme Court rejected this theory.

Huff seeks to distinguish *Ohio v. Johnson* on the ground that, here, the State did not object to the prepayment of the negligent driving fine, and the State did not prevent prepayment by nol prossing that charge before Huff paid the preset fine. The opposition of the state, however, to the guilty plea in *Ohio v. Johnson* was coincidental, and not critical, to the Court's rationale which we set forth below.

"The grand jury returned a single indictment, and all four charges were embraced within a single prosecution. Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline to hold it now.

. . . .

"We do not believe, however, that the principles of finality and prevention of prosecutorial overreaching applied in *Brown* reach this case. No interest of respondent protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment. Here respondent offered only

---

processed on a statewide basis for the District Court; other charges are not so processed.

to resolve part of the charges against him, while the State objected to disposing of any of the counts against respondent without a trial. Respondent has not been exposed to conviction on the charges to which he pleaded not guilty, nor has the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial. The acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending, moreover, has none of the implications of an 'implied acquittal' which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses."

467 U.S. at 501–02, 104 S.Ct. at 2541–42. *See also Grady v. Corbin,* 495 U.S. 508, 524, 110 S.Ct. 2084, 2095, 109 L.Ed.2d 548, 566 (1990) ("[T]he State could have prosecuted Corbin for the offenses charged in the traffic tickets and the subsequent indictment in a single proceeding, thereby avoiding this double jeopardy question."); *Apostoledes v. State,* 323 Md. 456, 468, 593 A.2d 1117, 1123 (1991).

JUDGMENT OF THE CIRCUIT COURT FOR CARO- LINE COUNTY VACATED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER RE- MANDING THIS CAUSE TO THE DISTRICT COURT OF MARYLAND SITTING IN CAROLINE COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT TO BE PAID BY THE COUNTY COMMISSIONERS OF CAROLINE COUN- TY. COSTS IN THE CIRCUIT COURT FOR CAROLINE COUNTY TO BE DIVIDED BETWEEN PETITIONER, CLINTON R. HUFF, AND THE COUNTY COMMISSION- ERS OF CAROLINE COUNTY.

McAULIFFE, Judge, concurring.

I concur in the result. I agree with the Court's conclu- sion that this defendant's right to demand a jury trial reasonably ensures appellate review of his double jeopardy

claim prior to trial, thus affording him the full protection of the Fifth Amendment and equal protection of the laws.

I am unwilling to join the Court's dictum suggesting that a defendant charged in the District Court with an offense punishable by imprisonment for 90 days or less has no right to an immediate appeal of the denial of a motion to dismiss based upon double jeopardy grounds. That question should be deferred for consideration in an appropriate case.

ROBERT M. BELL, Judge, dissenting.

I am in full agreement with the views expressed in part II of the majority opinion, addressing the merits of the petitioner's double jeopardy contention. On the other hand, I am in total disagreement with the views expressed in part I. I therefore respectfully dissent from part I of the majority opinion.

The "collateral order doctrine" refers to a "small class" of orders, *see Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528, 1536 (1949), which, being "final decision[s]" are deemed "final judgments" for purposes of the jurisdictional requirement in an applicable statute. *Abney v. United States,* 431 U.S. 651, 656–662, 97 S.Ct. 2034, 2038–2042, 52 L.Ed.2d 651, 657–662 (1977). To qualify as a "final judgment", such orders must "have 'fully disposed of the question [before the court]' "; be "completely collateral to the cause of action" before the court; and be reviewable, if at all, prior to the trial of the merits, *i.e.,* before final judgment. *Abney,* 431 U.S. at 658, 97 S.Ct. at 2039, 52 L.Ed.2d at 659, citing and quoting *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225, 93 L.Ed. at 1536. The issue disposed of, of course, must be an important issue. *See Peat & Co. v. Los Angeles Rams Football Co.,* 284 Md. 86, 92, 394 A.2d 801 (1978), quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351, 357–58 (1978).

The collateral order doctrine has been recognized in Maryland and, indeed, is very much alive. *Bunting v. State,*

312 Md. 472, 476–78, 540 A.2d 805, 806–07 (1988) and cases there cited. It has been held to be an "exception to the final judgment rule," *Parrott v. State*, 301 Md. 411, 414, 483 A.2d 68, 69 (1984), and as "treat[ing] as final and appealable a limited class of orders which do not terminate the litigation in the trial court," *Public Service Comm'n v. Patuxent Valley*, 300 Md. 200, 206, 477 A.2d 759, 762 (1984); thus, in effect, a "collateral order" is included in the definition of "final judgment", as used in Maryland Code (1973, 1989 Repl.Vol., 1991 Cumm.Supp.) § 12–301 of the Courts & Judicial Proceedings Article. By application of the collateral order doctrine, a defendant may immediately appeal a circuit court's denial of his motion to dismiss for double jeopardy. *Bunting v. State*, 312 Md. at 477–78, 540 A.2d at 807.

In *Abney*, the Supreme Court analyzed why the collateral order doctrine rendered appealable, on an interlocutory basis, an order denying an accused's double jeopardy defense. Such an order has all of the requisites of a "final decision". 431 U.S. at 658, 97 S.Ct. at 2039, 52 L.Ed.2d at 659. It is, first of all, a fully consummated decision, which constitutes "a complete, formal, and, in the trial court, final rejection of a criminal defendant's double jeopardy claim." 431 U.S. at 659, 97 S.Ct. at 2040, 52 L.Ed.2d at 660; moreover, because a defendant who makes such a claim is not addressing the merits in any way, simply the "very authority of the government to hale him into court to face trial on the charge against him", it is "collateral to, separable from," the principal issue in the accused's impending criminal trial, *i.e.*, "whether or not the accused is guilty of the offense charged," *id.;* and, lastly, it is effectively reviewable only if done before a trial of the merits. As to the latter point, acknowledging that the double jeopardy clause's only protection is not against being twice convicted of the same crime, which could be vindicated after a decision on the merits, 431 U.S. at 660, 97 S.Ct. at 2041, 52 L.Ed.2d at 661, the Court noted "[i]t [also] is a guarantee against being twice put to *trial* for the same offense."

(emphasis in original, footnote omitted) 431 U.S. at 661, 97 S.Ct. at 2041, 52 L.Ed.2d at 661. "Consequently, if a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." (emphasis in original). 431 U.S. at 662, 97 S.Ct. at 2041, 52 L.Ed.2d at 662.

Courts Art. § 12–401(a), governing appeals from the District Court, permits a party to appeal "from a final judgment entered in the District Court." Subsection (d) provides that the appeal, unless it is a civil case involving more than $2500.00 or the parties agree to proceed on the District Court record, is tried in the circuit court *de novo.* Similarly, a party may appeal a circuit court decision, but only if it is "a final judgment." Section 12–301. Although § 12–101(f) defines a "final judgment" as "a judgment, decree, sentence, order, determination, decision, or other action by a court ... from which an appeal, application for leave to appeal, or petition for certiorari may be taken," it does not specify precisely what orders are "final judgments". That decision, it has been held, properly belongs to this Court. *Cant v. Bartlett,* 292 Md. 611, 616, 440 A.2d 388, 390 (1982). Ordinarily, a judgment is final when it denies the person aggrieved by it the means of further prosecuting or defending his or her rights or interest in the subject matter of the proceedings. *Fred W. Allnutt, Inc. v. Commissioner of Labor Industry,* 289 Md. 35, 40, 421 A.2d 1360, 1363 (1980); *Schultz v. Pritts,* 291 Md. 1, 6, 432 A.2d 1319, 1323 (1981).

The District Court order denying the petitioner's motion to dismiss on double jeopardy grounds did not, as the majority points out, deny petitioner the means of further defending himself on the merits. Thus, it was not a final judgment on the merits. It was final, however, insofar as the double jeopardy defense is concerned; as to that issue, for all intents and purposes, the District Court's order was a "final decision". By virtue of that ruling, the petitioner could not further proceed on that issue in that court.

Furthermore, the ruling was as final as a similar ruling, made by a circuit court would be. As we have seen, application of the collateral order doctrine would render the circuit court ruling immediately appealable. The majority holds that the same result is not only not required, but prohibited, in the case of a District Court ruling.

Although recognizing the logic of giving the term "final judgment", as used in § 12–401(a), the same meaning that it has in § 12–301, the majority nevertheless reaches a contrary result. It proffers several reasons for doing so. In the interest of giving "due regard to the context surrounding the appeal," it asserts that, given the lack of an express prohibition against double jeopardy in the Maryland Constitution and the lateness of the extension of that prohibition to the States by the Fourteenth Amendment, "in the era preceding creation of the District Court of Maryland in 1971, an accused whose double jeopardy defense was denied by [a court of limited jurisdiction] could not have invoked the absolute constitutional right basis for an immediate appeal." It also argues that there is no necessity for permitting interlocutory appeals from courts of limited jurisdiction; in order to have the full benefit of the right enjoyed by a circuit court defendant, all a District Court defendant need do is pray a jury trial, thus removing his case to the circuit court, where, if his motion to dismiss on double jeopardy grounds were denied, he would be able to appeal immediately.

Yet another reason offered by the majority relates to the nature of the *de novo* appeal procedure. That form of appeal, it maintains, "simply is inappropriate for resolution of the kind of issues that trigger the collateral order doctrine" since such issues, almost universally, are legal issues. Finally, the majority believes that, by refusing to apply the collateral order doctrine, this Court avoids "additional complexities" inherent in a process which permits different aspects of one case to be tried in two different courts. The "additional complexities" arise, we are informed, because there is no mechanism under the present

rules for bringing the two pieces together at an appropriate time, for further review.

None of the rationales offered by the majority is persuasive. That there has never been a direct appeal allowed from an interlocutory order of a trial court of limited jurisdiction on the basis of the collateral order, or constitutional issue, analysis until recently does not answer the question and, indeed, begs it. The first case, and there always must be a first case, usually defines the parameters of a claimed right. That is precisely what is being requested of us in this case. It is, I repeat, no answer that we have never had a case like it before.

There is a necessity for a collateral order appeal from the District Court if one takes seriously both the rights afforded the defendant by the District Court appeal procedure and the applicability of the double jeopardy clause to defendants whose cases happen to begin in the District Court. Every double jeopardy defense that is raised in the District Court will not be successful. In point of fact, to be cognizable, it need only be colorable. *See Richardson v. United States,* 468 U.S. 317, 322, 104 S.Ct. 3081, 3084, 82 L.Ed.2d 242, 249 (1984), citing *United States v. MacDonald,* 435 U.S. 850, 862, 98 S.Ct. 1547, 1554, 56 L.Ed.2d 18, 29 (1978). Granted that, in most cases, the defendant in the District Court who raises the double jeopardy defense will likely be entitled to pray a jury trial, but to make the lack of necessity depend upon the defendant's exercise of that right is to require him to spend a constitutional right in order to get a ruling on a motion, the immediate reviewability of which, though not necessarily constitutionally mandated, is addressed to his enjoyment of another indisputable constitutional right, *i.e.,* freedom from twice being tried. A defendant charged in the District Court with an offense within that court's jurisdiction is entitled, if he or she wishes, to be tried in the District Court. That he or she has the right to remove the case to the circuit court by prayer for jury trial does not make it a necessity that he or she does so. Nor does it

present the kind of necessity that should render the collateral order doctrine inapplicable to District Court appeals.

A jury trial prayer removes the entire case, including the merits, to the circuit court. Thus, should the defendant's motion to dismiss fail, he or she would be tried in the circuit court; he or she will have forever lost his or her right to be tried in the District Court. And, contrary to the majority's suggestion, that right is not an insignificant one. Requiring the District Court defendant to pray a jury trial to obtain immediate review of the double jeopardy issue deprives the defendant who wishes to be tried in the District Court of a most significant right. Trial in the District Court, under the *de novo* appeal procedure, gives a defendant a free shot. He or she is enabled, by being permitted to see the State's evidence in the District Court trial, to assess the strength of its case and, in the event he or she chooses to put the State to its proof a second time in the circuit court, to prepare for any aspect of it as to which he or she was previously unaware or unprepared. Aside from the free shot or discovery reasons, a defendant may wish his or her case tried in the District Court because the disposition he or she receives there may be more favorable to him than one he or she could expect to receive in the circuit court.

The majority's citation to *Block v. State*, 286 Md. 266, 407 A.2d 320 (1979) as illustrative of the point that there is no necessity for an immediate appeal from the District Court does not, in my view, have that effect. All that case illustrates is that the defendant in that case chose to follow the scenario the majority endorses: he did not attempt to appeal the District Court's order pursuant to the collateral order doctrine. Since he did not raise the issue now before us, that case has no persuasive effect.

Nor is the majority's rationale that a *de novo* appeal is inappropriate for resolution of collateral order type issues persuasive. Whatever merit that proposition has, considered in a vacuum, it has absolutely none when it is placed in the context of this appeal. An appeal of the denial of the

motion to dismiss will involve nothing more than has previously occurred at the District Court level—argument on the motion. No trial either at the District Court level or the circuit court level will be required, simply an argument on the law, a fact that the majority specifically recognizes. There is no reason, therefore, for us to concern ourselves with any other scenario.

I have striven mightily, but without success, to determine what the majority means by "additional complexities." If a true collateral order doctrine appeal were permitted, any "additional complexities" associated with it would necessarily be resolved prior to the trial on the merits in the District Court. And, of course, if the double jeopardy defense were found to have merit, *i.e.*, the defendant prevailed, there would never be any necessity of a trial; the case would not need to be remanded or further reviewed. In any event, even when the defendant's double jeopardy appeal is unsuccessful and a trial on the merits is held, there still would never be an occasion to "further review" the appellate phase of the case; the collateral order appeal would have been completely resolved before the merits could be reached. Consequently, I fail to see how the "additional complexities" argument militates against a collateral order doctrine appeal from a District Court ruling on a motion to dismiss on double jeopardy grounds.

Whatever may be the merits of an analysis to determine whether an immediate appeal, on the basis of the collateral order doctrine, is constitutionally mandated,[1] whenever a

---

1. *In Ex Parte Robinson,* 641 S.W.2d 552 (Tx.Crim.App.1982), it was held that "There is a Fifth Amendment right not to be exposed to double jeopardy, and that it must be reviewable before that exposure occurs." *Id.* at 555. To reach that conclusion, the court interpreted *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) as being grounded on "the constitutional right not to be exposed to double jeopardy, which would be significantly undermined by postponement of review until after conviction." 641 S.W.2d at 555, quoting *United States v. Hollywood Motor Car Company,* 458 U.S. 263, 266, 102 S.Ct. 3081, 3083, 73 L.Ed.2d 754, 757 (1982). *State v. Choate,* 151 Ariz. 57, 725 P.2d 764 (Ariz.App.1986), reached the same result by

double jeopardy defense is denied, in Maryland, there is a well-established appellate mechanism. And that mechanism recognizes the role that the collateral order doctrine plays in assuring that important rights, constitutionally based, or otherwise, are vindicated in a timely fashion, before they are lost. *See Bunting v. State*, 312 Md. at 476–78, 540 A.2d 805; *State v. Hogg*, 311 Md. 446, 535 A.2d 923 (1988), *Harris v. Harris*, 310 Md. 310, 529 A.2d 356 (1987), *Yamaner v. Orkin*, 310 Md. 321, 529 A.2d 361 (1987), *Parrott v. State*, 301 Md. 411, 424–25, 483 A.2d 68, 75 (1984); *Public Service Comm'n v. Patuxent Valley*, 300 Md. 200, 477 A.2d 759 (1984), *Clark v. Elza*, 286 Md. 208, 211–213, 406 A.2d 922, 924–25 (1979), *Peat & Co. v. Los Angeles Rams*, 284 Md. at 91–92, 394 A.2d at 804. Furthermore, this Court has provided a meaningful review of the denial of a double jeopardy defense, as the majority acknowledges, by interpreting "final judgment", as used in Courts Article § 12–301, pertaining to circuit court appeals, to include an order denying a motion to dismiss on the ground of double jeopardy. *Bunting*, 312 Md. at 477–78, 540 A.2d 805. Consequently, we need not address whether there is a constitutional right to an immediate appeal from the denial of a motion to dismiss on double jeopardy grounds; we need only determine whether, given the appellate scheme in Maryland, interpreting "final judgment," as used in Courts Article § 12–401(a), to exclude an order denying a motion to dismiss on double jeopardy grounds, is violative of equal protection or due process of law.

_____

citing *Abney,* but without further analysis. *See also Nalbandian v. Superior Court,* 163 Ariz. 126, 786 P.2d 977, 981 (Ariz.App.1989) (the court disagreed with that portion of *Choate* that held that the double jeopardy claim could be heard on direct appeal); *Petition of Lucas,* 246 Kan. 486, 789 P.2d 1157, 1158 (1990); *Application of Berkowitz,* 3 Kan.App.2d 726, 602 P.2d 99, 102–03 (1979); *Ex Parte Loffland,* 670 S.W.2d 390, 392 (Tex.App.1984). In *Spradling v. Texas,* 455 U.S. 971, 972–74, 102 S.Ct. 1482, 1482–84, 71 L.Ed.2d 686, 686–87 (1982) (Mr. Justice Brennan, dissenting from the denial of certiorari, characterized "double jeopardy claims not considered prior to trial" as having "significant constitutional overtones."

There can be no doubt but that the denial of a motion to dismiss a prosecution on double jeopardy grounds is a collateral order from which a collateral order doctrine appeal would lie. *See Abney, supra.* Indeed, the majority recognizes that this is so. It maintains, however, that immediate appealability, applicable to circuit court appeals, has no role to play in district court appeals. There is, furthermore, it suggests, a rational basis for distinguishing between such appeals. Specifically, the majority reiterates the reasons it proffered when addressing the applicability of the collateral order doctrine to *de novo* appeals. That it does, does not render those reasons any more persuasive.

I agree that it is a legitimate state interest to seek "to enable persons who could not afford a transcript of the record the opportunity to have adverse judgments rendered by the District Court subject to a second look." That legitimate interest does not, however, negate, or even address, the question whether there should be an immediate appeal from an order by the District Court's denying a motion to dismiss on double jeopardy grounds. And it certainly provides no rational basis for interpreting "final judgment" one way when construing the circuit court appeal provision and interpreting it another way when construing the district court appeal provision. Permitting a second look at a critical issue, even if it is one required to be resolved before the merits are reached, is consistent with the purpose of the *de novo* appeal procedure. It is not, in any event, inconsistent.

The majority also denies that there is a due process violation. Again its argument is premised on the availability to a litigant in the District Court, through the jury trial prayer, of the right to obtain an immediate appeal from a ruling on a nonfrivolous double jeopardy defense prior to being tried. To this argument, I again ask, at what cost? The immediate appeal may be available, but only by removal of the case to the circuit court. Thus, it is one step removed, *i.e.,* the defendant must first pray a jury trial and remove the case from the District Court to the circuit court.

Only then may he or she move to dismiss on double jeopardy grounds and, obtaining an unfavorable ruling, take an immediate appeal to the Court of Special Appeals. This is the only rationale the majority provides for the different treatment. It does not suggest that a circuit court litigant must give up the right to trial on the merits in the circuit court as a prerequisite to review, in a meaningful and timely way, when the double jeopardy question is presented for the first time in that court. Moreover, the majority fails to discuss, and pointedly so, what the District Court litigant must give up to obtain the immediate appeal benefit. More to the point, it does no more than denigrate a litigant's desire to preserve his or her right to trial on the merits in the District Court, if his or her double jeopardy defense fails. As previously mentioned, I believe the right to be tried on the merits in the District Court to be significant and certainly worthy of preservation. This is especially the case when the issue may be resolved by reconciling the interpretation of the term "final judgment," as used in different statutes.

Nor am I impressed by the majority's "practical" argument that the "result of not providing immediate appeals in District Court cases is that the case ordinarily can be tried and decided on the merits in less time than it would take for the clerk of the District Court to transmit the case to a clerk of a circuit court, had the District Court ruling on motion been immediately appealable." Assuming that that is true, the argument nevertheless misses the point; it is not how much time the District Court proceedings will take, rather the question is whether a District Court litigant deserves an opportunity to vindicate his double jeopardy rights to the same extent as a circuit court litigant.

Finally, the majority suggests that the cases in the District Court, being minor ones, "[d]o not ordinarily subject the defendant to 'embarrassment, expense and ordeal' or compel the defendant 'to live in a continuing state of anxiety and insecurity' to the degree contemplated in *Green v. United States,* 355 U.S. [184,] 187, 78 S.Ct. at [221,] 223

[2 L.Ed.2d 199] [ (1957) ]." When the case is that serious, it posits, the defendant may pray a jury trial and obtain the immediate and direct appeal. First of all, the Court in *Green* did not quantify the extent of the embarrassment, expense, ordeal, state of anxiety, or insecurity that must exist before the State's attempts to convict its citizen will not be permitted to continue. Rather, the thrust of *Green* is that the State's power should be curtailed so as to insulate one faced with prosecution, for whatever charge, from being placed in the situation of the defendant in *Green*. Furthermore, where the majority gets the notion that it is the nature of the prosecution, rather than the fact of prosecution, that triggers the need for double jeopardy protection is beyond me. And, because it is the fact of prosecution that triggers the double jeopardy protection, it follows inexorably that an opportunity to avoid that prosecution before a trial is held is minimally required. Should, however, the attempt to avoid a second trial be unsuccessful and the defendant does not otherwise elect, I would require that trial to be held in the forum in which the prosecution arose.

I reiterate, I dissent.